807 So.2d 633 (2001)
AMENDMENT TO FLORIDA RULES OF CRIMINAL PROCEDURE CREATING RULE 3.853 (DNA Testing).
Amendment to Florida Rules of Appellate Procedure 9.140 & 9.141.
Nos. SC01-363, SC01-1649.
Supreme Court of Florida.
October 18, 2001.
Oscar H. Eaton, Jr., Past Chair, The Florida Bar Criminal Procedure Rules Committee, Sanford, FL, Robert R. Wills, Assistant Public Defender, Fort Lauderdale, FL, John F. Harkness, Jr., Executive Director, The Florida Bar, Tallahassee, FL; James T. Miller, Chair, Amicus Curiae Committee, Florida Association of Criminal Defense Lawyers, Jacksonville, FL, on behalf of Jerry Berry, President, FACDL, Naples, FL; and Winifred J. Sharp, Chair, Appellate Court Rules Committee, Daytona Beach, FL, for Petitioners.
Chet Kaufman and Paula S. Saunders, Assistant Public Defenders, Second Judicial Circuit, Tallahassee, FL, Christina A. Spaulding, Assistant Public Defender, Eleventh Judicial Circuit, Miami, FL, John J. Skye, Chief Assistant Public Defender, Thirteenth Judicial Circuit, Tampa, FL, and William P. White, III, Chief Assistant Public Defender, Fourth Judicial Circuit, Jacksonville, FL, on behalf of Florida Public Defender Association, Inc.; Michael P. Reiter, Capital Collateral Regional Counsel Northern Region, Tallahassee, FL; Neal A. Dupree, Capital Collateral Regional CounselSouthern Region, and Todd G. Scher, Litigation Director, CCRCSouthern Region, Fort Lauderdale, FL; Barry C. Scheck, Co-Director, The Innocence Project, New York, NY; Carolyn M. Snurkowski, Assistant Attorney General, Tallahassee, FL; Arthur I. Jacobs, General Counsel, Florida Prosecuting Attorneys Association, Fernandina Beach, FL; Michael R. Ramage, General Counsel, the Florida Department of Law Enforcement, Tallahassee, FL; Tom Feeney, Speaker, Florida House of Representatives, Tallahassee, FL, Responding.
PER CURIAM.
We have before us the Criminal Procedure Rules Committee's amended emergency petition to create new Rule of Criminal Procedure 3.853 (DNA Testing) and the Appellate Court Rules Committee's emergency petition to amend Rules of Appellate Procedure 9.140 and 9.141 (Appeals from DNA Testing Under Proposed Rule 3.853). We have jurisdiction. See art. V, § 2(a), Fla. Const. We adopt proposed new rule 3.853 with the modifications explained below. We also adopt the proposed amendments to rules 9.140 and 9.141.

BACKGROUND
In February 2001, the Criminal Rules Committee filed an emergency petition asking this Court to adopt new rule 3.853 providing for postconviction DNA testing. During the 2001 regular session, and after the Criminal Rules Committee filed its original petition, the Legislature passed DNA legislation, which, among other things, provides for postsentencing DNA testing. See Fla. CS for CS for SB 366 (2001), ch.2001-97, Laws of Fla. (creating §§ 925.11 and 943.3241 and amending § 943.325, Fla. Stat.). After considering the proposed rule, which varied from the new legislation in several respects, and hearing argument, the Court returned the matter to the Criminal Rules Committee for expedited reconsideration in light of the new legislation. Amendment to Florida *634 Rules of Criminal Procedure Creating Rule 3.853 (DNA testing), No. SC01-363 (unpublished order) (Fla. June 6, 2001).
On July 2, 2001, the Criminal Rules Committee filed the amended proposal now before the Court. The amended proposal was published for comments and oral argument was set for August 28, 2001.
On August 1, 2001, the Appellate Rules Committee filed an emergency petition to amend Rules of Appellate Procedure 9.140 and 9.141 to provide for appeals in rule 3.853(DNA) proceedings. That petition was consolidated with the rule 3.853 petition. Because of the August 1 filing date, the Appellate Rules Committee's proposed amendments were not published for comment prior to August 28, 2001, oral argument on the petitions.

PROPOSED RULE 3.853
Proposed rule 3.853 varies from the new DNA legislation in several respects, the most significant of which are the provisions addressing who may seek postconviction DNA testing and the laboratory or agency that must conduct the testing. Chapter 2001-97, section 1, Laws of Florida, creates section 925.11(1)(a), Florida Statutes, which provides that a person who has been tried and found guilty may move the court to order postsentencing DNA testing. Like the legislation, proposed rule 3.853(a) authorizes DNA testing for those who have been tried and convicted but the rule also authorizes testing for those who entered guilty or nolo contendere pleas. Chapter 2001-97, section 1, also creates section 925.11(2)(h), Florida Statutes, which provides for court-ordered DNA testing to be conducted by the Florida Department of Law Enforcement (FDLE) or its designee, as provided in section 943.3251. See ch.2001-97, section 2, Laws of Fla. (creating § 943.3251(1) which provides that FDLE or its designee shall carry out court-ordered DNA testing). Proposed rule 3.853(c)(7) tracks the legislation but further authorizes the court, on a showing of good cause, to order testing by another laboratory or agency.

DISCUSSION
The majority of those who filed comments in opposition to proposed rule 3.853 raise separation of powers concerns in connection with proposed subdivisions (a) and (c)(7), taking the position that these provisions deal with substantive matters that are within the sole purview of the Legislature. The proponents of the proposed rule maintain that these provisions are either procedural in nature or within this Court's constitutional authority to issue writs of habeas corpus under article V, section (8) of the Florida Constitution. After considering the comments filed with the Court and presented at oral argument as well as the broad policy issues surrounding postconviction DNA testing, we adopt the appended procedures to effectuate the new legislation without reaching the constitutional issues raised in this proceeding. Cf. In re Amendments to the Florida Evidence Code, 782 So.2d 339 (Fla.2000) (declining to address substantive/procedural issues in a rules amendment case).
We have modified proposed subdivision (a) of the proposed rule to explain that the new rule simply provides procedures for obtaining DNA testing under section 925.11, Florida Statutes. Subdivision (b) of rule 3.853 lists the contents of a motion seeking DNA testing. In response to the comments and consistent with subsection (1)(a) of section 925.11, which authorizes DNA testing when the evidence tested may contain DNA that would exonerate the movant or mitigate the sentence received, we have modified subdivision (b)(4) of the new rule to require:
a statement that identification of the movant is a genuinely disputed issue in *635 the case, and why it is an issue or an explanation of how the DNA evidence would either exonerate the defendant or mitigate the sentence that the movant received.

Subdivision (c) of the new rule provides general procedures to be followed after a motion for testing is filed. Specifically, we have amended subdivision (c)(7) to allow the court, on a showing of good cause, to order testing by a laboratory or agency, certified by the American Society of Crime Laboratory Directors or the National Forensic Science Training Center, other than FDLE or its designee when requested by a movant who can bear the costs of such testing.
Subdivision (d) of the new rule provides time limitations for seeking postconviction DNA testing. At this time, we adhere to the two-year time limitations contained in the new legislation. However, we adopt proposed subdivision (d)(2), which addresses matters not addressed by the new legislation, as modified below:
A motion to vacate filed under rule 3.850 or a motion for postconviction or collateral relief filed under rule 3.851, which is based solely on the results of the court-ordered DNA testing obtained under this rule, shall be treated as raising a claim of newly-discovered evidence and the time periods set forth in rules 3.850 and 3.851 shall commence on the date that the written test results are provided to the court, the movant, and the prosecuting authority pursuant to subsection (c)(8).

Subdivisions (e) and (f) of the new rule provide procedures for rehearing and appeal. In response to a comment by The Honorable O.H. Eaton, Jr., Past Chair of the Criminal Procedure Rules Committee, we have modified proposed subdivision (f) to provide that an appeal may be taken within thirty days from the date the order on the motion is rendered, rather than within thirty days from the entry of the order. Rules 9.140 and 9.141 are amended to provide procedures for appeals from rule 3.853 orders, which parallel the procedures for appeals in rule 3.850 and rule 3.800(a) proceedings.
Accordingly, with the modifications noted above, we adopt proposed Florida Rule of Criminal Procedure 3.853, and amend Florida Rules of Appellate Procedure 9.140 and 9.141, as reflected in the appendix to this opinion. New language is indicated by underscoring; deletions are indicated by struck-through type. The new rule and amendments shall become effective immediately. However, because the amendments to rules 9.140 and 9.141 have not been published for comment, interested parties shall have until December 17, 2001, in which to file comments addressing those changes.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, and LEWIS, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which PARIENTE and QUINCE, JJ., concur.
ANSTEAD, J., concurring in part and dissenting in part.
I would grant the petition of the Criminal Procedure Rules Committee to adopt a comprehensive rule providing for postconviction DNA testing of all convicted persons who can meet the rigorous requirements of the proposed rule. The Committee, consisting of judges, prosecutors, defense lawyers and law teachers, voted thirty-two to four to adopt the rule. The Board of Governors of the Florida Bar voted unanimously to support the Committee's filing.
*636 I cannot agree with the majority's apparent decision to reject the Committee's proposal, and to essentially postpone any consideration of those issues not resolved by the enactment of legislation providing for limited postconviction DNA testing until an inmate claiming an unjust conviction and an entitlement to DNA testing brings those issues to the Court. Rather than delay, we should enthusiastically embrace the use of this science which can only serve to enhance confidence in our criminal justice system by bringing more certainty to a determination of guilt or innocence, or just punishment.[1]
All agree that DNA testing offers a unique opportunity to lend credibility and certainty to a case for guilt or innocence. Arguably, we are already extremely late in responding to the scientific community's ever increasing ability to assist the criminal justice system through the use of DNA testing. Now, because there is virtual universal agreement as to the value of this testing in resolving critical criminal justice issues, we should not hesitate to broadly embrace its use both in original proceedings and in postconviction proceedings where there is a credible concern that an injustice may have occurred and DNA testing may resolve the issue. By taking a pass on the opportunity to treat this issue comprehensively we are not only neglecting our own responsibility to the criminal justice system, but we are also inviting confusion and uncertainty as to whether there should be equal access to such testing for all with credible claims of being unjustly convicted or punished.
While the Committee's proposal provides for the possibility of testing for all convicted persons, the legislation providing for postconviction DNA testing is limited to inmates convicted after a contested trial and excludes those convicted through pleas of guilty or nolo contendere such as occur when criminal charges are resolved through plea negotiations. Of course, we know as a fact the overwhelming majority of criminal cases are resolved through plea negotiations and, hence, any DNA testing under the legislation excluding those cases will be limited to a small percentage of convicted defendants. To be sure, however, we also know that plea bargaining often results in many cases of pleas of convenience or best interests where the defendant simply acknowledges that the uncertain risk of trial on additional and more serious charges compels him to accept conviction and punishment even while maintaining innocence. We have consistently recognized that courts should grant relief when a fundamental injustice has been demonstrated regardless of whether the defendant was convicted by trial or by plea.
At its core, access to DNA testing is simply a unique means of establishing a claim of illegal detention or punishment under the constitutional writ of habeas corpus. Entitlement to access to the courts for relief under the writ of habeas corpus is provided for expressly in Florida's Constitution and this Court has held that it possesses exclusive jurisdiction to determine the proper procedures for invocation of the writ. Our rules of postconviction procedure were enacted to simplify and facilitate the fair and orderly processing of habeas corpus claims by any defendant, claims that are cognizable under that writ regardless of whether that defendant was convicted by contested trial or plea.
*637 The salient issue in such proceedings is whether there is a credible claim that a fundamental injustice has occurred. The fact is that injustices, when they do occur, are simply not limited to contested trials. They may occur more often in contested cases and less often in cases based on pleas, but experience has taught us they still occur in both settings. If a fundamental injustice occurs in the criminal justice process and it can be corrected, are we now to ignore it? Because we have never so limited, nor could we, access to the writ of habeas corpus only to those imprisoned through trial, the answer is, of course, a resounding no.[2] We have not and could not limit the availability of constitutional habeas corpus relief to only contested cases.
We should not overlook that postconviction claims generally are rarely successful. Of course, those inmates who have entered pleas carry an extra burden in attempting to set aside a conviction obtained by plea, a burden not shouldered by those convicted through trial. The effect of this extra burden is obvious and is evidenced by the extreme rarity of claims successfully prosecuted. Further, since the overwhelming majority of criminal cases simply do not involve identification by DNA, the defendants in those cases will not be eligible for relief under any statute or rule on DNA. Finally, a postconviction claimant seeking DNA testing has the burden of demonstrating a credible claim that DNA testing may establish that he is being unjustly detained before he will even become eligible for such testing. Taken together, all this means that only a small percentage of criminal cases will even be affected by the availability of DNA testing. We are hardly opening any floodgates. But, for the rare case that presents a credible claim, we have the unique opportunity to lay to rest, through definitive DNA testing, the concern that a serious miscarriage of justice may have occurred.[3]
Finally, I have grave concerns for a decision of this Court rejecting the present enormous opportunity offered by the advent of DNA testing. These concerns have already been well articulated by *638 Judge Sharp of the Fifth District Court of Appeal:
Frankly, I think it is a very harsh reading of the two-year time limit in rule 3.850 to bar testing and perhaps relief from conviction under the circumstances of this case. Rule 3.850(b) bars relief in non-capital cases unless the facts on which the claim is predicated were unknown to the movant and could not have been ascertained by the exercise of due diligence. See Pope v. State, 702 So.2d 221, 223, n. 1 (Fla.1997); McCray v. State, 701 So.2d 1266 (Fla. 3d DCA 1997). DNA testing is a recent, highly accurate, application of scientific principles unknown at the time of Dedge's trial. It is not well known to or understood by most lawyers and judges, I would wager, even in 1998. I think it unfair and unrealistic to expect an indigent, serving two life sentences in prison, to have had notice of the existence of PCR-based testing, and possible application to his case prior to 1995 when it was first discussed by a Florida court. Zeigler. Further, even today it is not admissible, across the board
One of my worst nightmares as a judge, is and has been, that persons convicted and imprisoned in a "legal" proceeding, are in fact innocent. If there is a way to establish their true innocence on the basis of a highly accurate objective scientific test, like the PCR, in good conscience it should be permitted. This case calls out for such relief: the evidence of Dedge's guilt at trial was minimal; the PCR test had not been developed at the time of his trial. Even as this dissent is being written, admissibility of PCR tests in Florida courts is still being debated and the results of the tests, if successfully performed, will likely be absolutely conclusive of either his guilt or innocence. Not to do the testing consigns a possibly innocent man to spend the rest of his life in prison. I would reverse the order and direct release of the evidence for the purpose of DNA testing.
Dedge v. State, 723 So.2d 322, 324 (Fla. 5th DCA 1998) (Sharp, J., dissenting) (footnote omitted). We should listen to the voices of Judge Sharp and others, including our own Committee, and act now to facilitate the use of DNA testing in postconviction proceedings. We should not pass on this opportunity to improve the administration of justice and to increase confidence in the outcomes of criminal proceedings.
PARIENTE and QUINCE, JJ., concur.

APPENDIX

RULE 3.853 MOTION FOR POSTCONVICTION DNA TESTING
(a) Purpose. This rule provides procedures for obtaining DNA (deoxyribonucleic acid) testing under section 925.11, Florida Statutes.
(b) Contents of Motion. The motion for postconviction DNA testing must be under oath and must include the following:
(1) a statement of the facts relied on in support of the motion, including a description of the physical evidence containing DNA to be tested and, if known, the present location or last known location of the evidence and how it originally was obtained;
(2) a statement that the evidence was not tested previously for DNA, or a statement that the results of previous DNA testing were inconclusive and that subsequent scientific developments in DNA testing techniques likely would produce a definitive result;
(3) a statement that the movant is innocent and how the DNA testing requested by the motion will exonerate the movant of the crime for which the movant *639 was sentenced, or a statement how the DNA testing will mitigate the sentence received by the movant for that crime;
(4) a statement that identification of the movant is a genuinely disputed issue in the case and why it is an issue or an explanation of how the DNA evidence would either exonerate the defendant or mitigate the sentence that the movant received;
(5) a statement of any other facts relevant to the motion; and
(6) a certificate that a copy of the motion has been served on the prosecuting authority.
(c) Procedure.
(1) On receipt of the motion, the clerk of the court shall file it and deliver the court file to the assigned judge.
(2) The court shall review the motion and deny it if it is insufficient. If the motion is sufficient, the prosecuting authority shall be ordered to respond to the motion within 30 days or such other time as may be ordered by the court.
(3) On receipt of the response of the prosecuting authority, the court shall review the response and enter an order on the merits of the motion or set the motion for hearing.
(4) In the event that the motion shall proceed to a hearing, the court may appoint counsel to assist the movant if the court determines that assistance of counsel is necessary and on making the appropriate finding of indigence.
(5) The court shall make the following findings when ruling on the motion:
(A) Whether it has been shown that physical evidence that may contain DNA still exists.
(B) Whether the results of DNA testing of that physical evidence likely would be admissible at trial and whether there exists reliable proof to establish that the evidence containing the tested DNA is authentic and would be admissible at a future hearing.
(C) Whether there is a reasonable probability that the movant would have been acquitted or would have received a lesser sentence if the DNA evidence had been admitted at trial.
(6) If the court orders DNA testing of the physical evidence, the cost of the testing may be assessed against the movant, unless the movant is indigent. If the movant is indigent, the state shall bear the cost of the DNA testing ordered by the court.
(7) The court-ordered DNA testing shall be ordered to be conducted by the Department of Law Enforcement or its designee, as provided by statute. However, the court, on a showing of good cause, may order testing by another laboratory or agency certified by the American Society of Crime Laboratory Directors or the National Forensic Science Training Center when requested by a movant who can bear the cost of such testing.
(8) The results of the DNA testing ordered by the court shall be provided in writing to the court, the movant, and the prosecuting authority.
(d) Time Limitations.
(1) The motion for postconviction DNA testing must be filed:
(A) Within 2 years following the date that the judgment and sentence in the case became final if no direct appeal was taken; within 2 years following the date the conviction was affirmed on direct appeal if an appeal was taken; within 2 years following the date collateral counsel was appointed or retained subsequent to the *640 conviction being affirmed on direct appeal in a capital case in which the death penalty was imposed; or by October 1, 2003, whichever occurs later; or
(B) At any time, if the facts on which the petition is predicated were unknown to the petitioner or the movant's attorney and could not have been ascertained by the exercise of due diligence.
(2) A motion to vacate filed under rule 3.850 or a motion for postconviction or collateral relief filed under rule 3.851, which is based solely on the results of the court-ordered DNA testing obtained under this rule, shall be treated as raising a claim of newly-discovered evidence and the time periods set forth in rules 3.850 and 3.851 shall commence on the date that the written test results are provided to the court, the movant, and the prosecuting authority pursuant to subsection (c)(8).
(e) Rehearing. The movant may file a motion for rehearing of any order denying relief within 15 days after service of the order denying relief. The time for filing an appeal shall be tolled until an order on the motion for rehearing has been entered.
(f) Appeal. An appeal may be taken by any adversely affected party within 30 days from the date the order on the motion is rendered. All orders denying relief must include a statement that the movant has the right to appeal within 30 days after the order denying relief is rendered.

RULE 9.140. APPEAL PROCEEDINGS IN CRIMINAL CASES
(a) Applicability. Appeal proceedings in criminal cases shall be as in civil cases except as modified by this rule.
(b) Appeals by Defendant.
(1) Appeals Permitted. A defendant may appeal
(A) a final judgment adjudicating guilt;
(B) a final order withholding adjudication after a finding of guilt;
(C) an order granting probation or community control, or both, whether or not guilt has been adjudicated;
(D) orders entered after final judgment or finding of guilt, including orders revoking or modifying probation or community control, or both, or orders denying relief under Florida Rule of Criminal Procedure 3.800(a), or 3.850, or 3.853;
(E) an unlawful or illegal sentence;
(F) a sentence, if the appeal is required or permitted by general law; or
(G) as otherwise provided by general law.
(2) Guilty or Nolo Contendere Pleas.
(A) Pleas. A defendant may not appeal from a guilty or nolo contendere plea except as follows:
(i) Reservation of Right to Appeal. A defendant who pleads guilty or nolo contendere may expressly reserve the right to appeal a prior dispositive order of the lower tribunal, identifying with particularity the point of law being reserved.
(ii) Appeals Otherwise Allowed. A defendant who pleads guilty or nolo contendere may otherwise directly appeal only
a. the lower tribunal's lack of subject matter jurisdiction;
b. a violation of the plea agreement, if preserved by a motion to withdraw plea;
c. an involuntary plea, if preserved by a motion to withdraw plea;
d. a sentencing error, if preserved; or
*641 e. as otherwise provided by law.
(B) Record.
(i) Except for appeals under subdivision (b)(2)(A) of this rule, the record for appeals involving a plea of guilty or nolo contendere shall be limited to:
a. all indictments, informations, affidavits of violation of probation or community control, and other charging documents;
b. the plea and sentencing hearing transcripts;
c. any written plea agreements;
d. any judgments, sentences, scoresheets, motions, and orders to correct or modify sentences, orders imposing, modifying, or revoking probation or community control, orders assessing costs, fees, fines, or restitution against the defendant, and any other documents relating to sentencing;
e. any motion to withdraw plea and order thereon;
f. notice of appeal, statement of judicial acts to be reviewed, directions to the clerk, and designation to the court reporter.
(ii) Upon good cause shown, the court, or the lower tribunal before the record is transmitted, may expand the record.
(3) Commencement. The defendant shall file the notice prescribed by rule 9.110(d) with the clerk of the lower tribunal at any time between rendition of a final judgment and 30 days following rendition of a written order imposing sentence. Copies shall be served on the state attorney and attorney general.
(4) Cross-Appeal. A defendant may cross-appeal by serving a notice within 10 days of service of the state's notice or service of an order on a motion pursuant to Florida Rule of Criminal Procedure 3.800(b)(2). Review of cross-appeals before trial is limited to related issues resolved in the same order being appealed.
(5) Withdrawal of Defense Counsel after Judgment and Sentence. The attorney of record for a defendant in a criminal proceeding shall not be relieved of any professional duties, or be permitted to withdraw as counsel of record, except with approval of the lower tribunal on good cause shown on written motion, until after
(A) the following have been completed:
(i) The notice of appeal has been filed.
(ii) The statement of judicial acts to be reviewed has been filed, if a transcript will require the expenditure of public funds.
(iii) Directions to the clerk have been filed, if necessary.
(iv) A designation of that portion of the reporter's transcript necessary to support the statement of judicial acts to be reviewed has been filed, if a transcript will require expenditure of public funds.
(v) Substitute counsel has been obtained or appointed, or a statement has been filed with the appellate court that the appellant has exercised the right to self-representation. In publicly-funded cases, the public defender for the local circuit court shall initially be appointed until the record is transmitted to the appellate court.
Or
(B) the time has expired for the filing of notice of appeal, and no such notice has been filed.
*642 Orders allowing withdrawal of counsel are conditional and counsel shall remain of record for the limited purpose of representing the defendant in the lower tribunal regarding any sentencing error the lower tribunal is authorized to address during the pendency of the direct appeal pursuant to Florida Rule of Criminal Procedure 3.800(b)(2).
(6) Procedure in Death Penalty Appeals.
(A) When the notice of appeal is filed in the supreme court, the chief justice will direct the appropriate chief judge of the circuit court to monitor the preparation of the complete record for timely filing in the supreme court.
(B) After the record is filed, the clerk will promptly establish a briefing schedule allowing the defendant 60 days from the date the record is filed, the state 45 days from the date the defendant's brief is served, and the defendant 30 days from the date the state's brief is served to serve their respective briefs. On appeals from orders ruling on applications for relief under Florida Rule of Criminal Procedure 3.850 or 3.853, and on resentencing matters, the schedules set forth in subdivision (f) of this rule will control. In addition to filing paper copies of transcripts, the court reporter shall file with the clerk of the lower tribunal, on clearly labeled computer disks in a format approved by the supreme court, sufficient copies of these transcripts for the clerk of the lower tribunal to include the disks in the record transmitted to the court and to the parties.
(C) If any brief is delinquent, an order to show cause may issue under Florida Rule of Criminal Procedure 3.840, and sanctions may be imposed.
(D) Oral argument will be scheduled after the filing of the defendant's reply brief.
(E) In death penalty cases, all petitions for extraordinary relief over which the supreme court has original jurisdiction, including petitions for writ of habeas corpus, shall be filed simultaneously with the initial brief in the appeal from the lower tribunal's order on the defendant's application for relief under Florida Rule of Criminal Procedure 3.850.
(c) Appeals by the State.
(1) Appeals Permitted. The state may appeal an order
(A) dismissing an indictment or information or any count thereof or dismissing an affidavit charging the commission of a criminal offense, the violation of probation, the violation of community control, or the violation of any supervised correctional release;
(B) suppressing before trial confessions, admissions, or evidence obtained by search and seizure;
(C) granting a new trial;
(D) arresting judgment;
(E) granting a motion for judgment of acquittal after a jury verdict;
(F) discharging a defendant under Florida Rule of Criminal Procedure 3.191;
(G) discharging a prisoner on habeas corpus;
(H) finding a defendant incompetent or insane;
(I) granting relief under Florida Rule of Criminal Procedure 3.853;
(IJ) ruling on a question of law if a convicted defendant appeals the judgment of conviction;
(JK) imposing an unlawful or illegal sentence or imposing a sentence outside *643 the range permitted by the sentencing guidelines;
(KL) imposing a sentence outside the range recommended by the sentencing guidelines;
(LM) denying restitution; or
(MN) as otherwise provided by general law for final orders.
(2) Non-Final Orders. The state as provided by general law may appeal to the circuit court non-final orders rendered in the county court.
(3) Commencement. The state shall file the notice prescribed by rule 9.110(d) with the clerk of the lower tribunal within 15 days of rendition of the order to be reviewed; provided that in an appeal by the state under rule 9.140(c)(1)(IJ), the state's notice of cross-appeal shall be filed within 10 days of service of defendant's notice or service of an order on a motion pursuant to rule 3.800(b)(2). Copies shall be served on the defendant and the attorney of record. An appeal by the state shall stay further proceedings in the lower tribunal only by order of the lower tribunal.
(d) Sentencing Errors. A sentencing error may not be raised on appeal unless the alleged error has first been brought to the attention of the lower tribunal:
(1) at the time of sentencing; or
(2) by motion pursuant to Florida Rule of Criminal Procedure 3.800(b).
(e) Record.
(1) Service. The clerk of the lower tribunal shall prepare and serve the record prescribed by rule 9.200 within 50 days of the filing of the notice of appeal.
(2) Transcripts.
(A) If a defendant's designation of a transcript of proceedings requires expenditure of public funds, trial counsel for the defendant (in conjunction with appellate counsel, if possible) shall serve, within 10 days of filing the notice, a statement of judicial acts to be reviewed, and a designation to the court reporter requiring preparation of only so much of the proceedings as fairly supports the issue raised.
(B) Either party may file motions in the lower tribunal to reduce or expand the transcripts.
(C) Except as permitted in subdivision (e)(2)(D) of this rule, the parties shall designate the court reporter to file with the clerk of the lower tribunal the original transcripts for the court and sufficient copies for the state and all indigent defendants.
(D) Non-indigent defendants represented by counsel may designate the court reporter to prepare only original transcripts. Counsel adopting this procedure shall, within 5 days of receipt of the original transcripts from the court reporter, file the original transcripts along with securely bound copies for the state and all defendants. Counsel shall serve notice of the use of this procedure on the attorney general (or the state attorney in appeals to circuit court) and the clerk of the lower tribunal. Counsel shall attach a certificate to each copy certifying that it is an accurate and complete copy of the original transcript. When this procedure is used, the clerk of the lower tribunal upon conclusion of the appeal shall retain the original transcript for use as needed by the state in any collateral proceedings and shall not destroy the transcripts without the consent of the Office of the Attorney General.
(E) In state appeals, the state shall designate the court reporter to prepare and file with the clerk of the lower tribunal the original transcripts and sufficient copies for all separately represented defendants. Alternatively, the state may elect *644 to use the procedure specified in subdivision (e)(2)(D) of this rule.
(F) The lower tribunal may by administrative order in publicly-funded cases direct the clerk of the lower tribunal rather than the court reporter to prepare the necessary copies of the original transcripts.
(3) Retention of Documents. Unless otherwise ordered by the court, the clerk of the lower tribunal shall retain all original documents except the original transcripts designated for appeal which shall be included in the record transmitted to the court.
(4) Service of Copies. The clerk of the lower tribunal shall serve copies of the record to the court, attorney general (or state attorney in appeals to circuit court), and all counsel appointed to represent indigent defendants on appeal. The clerk of the lower tribunal shall simultaneously serve copies of the index to all non-indigent defendants and, upon their request, copies of the record or portions thereof at the cost prescribed by law.
(5) Return of Record. Except in death penalty cases, the court shall return the record to the lower tribunal after final disposition of the appeal.
(6) Supplemental Record for Motion to Correct Sentencing Error Pursuant to Florida Rule of Criminal Procedure 3.800(b)(2).
(A) The clerk of circuit court shall automatically supplement the appellate record with any motion pursuant to Florida Rule of Criminal Procedure 3.800(b)(2), any response, any resulting order, and any amended sentence. The clerk shall transmit the supplement to the appellate court within 5 days of the filing of the order ruling on the motion. If an order is not filed within 60 days from the filing of the motion, this time shall run from the expiration of the 60 day period, and the clerk shall supplement the record with the motion and a statement that no order was timely filed.
(B) If any appellate counsel determines that a transcript of a proceeding relating to such a motion is required to review the sentencing issue, appellate counsel shall, within 5 days from the transmittal of the supplement described in subdivision (A), designate those portions of the proceedings not on file deemed necessary for transcription and inclusion in the record. A copy of the designation shall be filed with the appellate court. The procedure for this supplementation shall be in accordance with Florida Rule of Appellate Procedure 9.140(e), except that counsel is not required to file a revised statement of judicial acts to be reviewed, the court reporter shall deliver the transcript within 15 days, and the clerk shall supplement the record with the transcript within 5 days of its receipt.
(f) Briefs. Initial briefs shall be served within 30 days of service of the record or designation of appointed counsel, whichever is later. Additional briefs shall be served as prescribed by rule 9.210.
(g) Post-Trial Release.
(1) Appeal by Defendant. The lower tribunal may hear a motion for post-trial release pending appeal before or after a notice is filed; provided that the defendant may not be released from custody until the notice is filed.
(2) Appeal by State. An incarcerated defendant charged with a bailable offense shall on motion be released on the defendant's own recognizance pending an appeal by the state, unless the lower tribunal for good cause stated in an order determines otherwise.
*645 (3) Denial of Post-Trial Release. All orders denying post-trial release shall set forth the factual basis on which the decision was made and the reasons therefor.
(4) Review. Review of an order relating to post-trial release shall be by the court on motion.
(h) Scope of Review. The court shall review all rulings and orders appearing in the record necessary to pass upon the grounds of an appeal. In the interest of justice, the court may grant any relief to which any party is entitled. In death penalty cases, the court shall review the evidence to determine if the interest of justice requires a new trial, whether or not insufficiency of the evidence is an issue presented for review.

Committee Notes
1977 Amendment. This rule represents a substantial revision of the procedure in criminal appeals.
Subdivision (a) makes clear the policy of these rules that procedures be standardized to the maximum extent possible. Criminal appeals are to be governed by the same rules as other cases, except for those matters unique to criminal law that are identified and controlled by this rule.
Subdivision (b)(1) lists the only matters that may be appealed by a criminal defendant, and it is intended to supersede all other rules of practice and procedure. This rule has no effect on either the availability of extraordinary writs otherwise within the jurisdiction of the court to grant, or the supreme court's jurisdiction to entertain petitions for the constitutional writ of certiorari to review interlocutory orders. This rule also incorporates the holding in State v. Ashby, 245 So.2d 225 (Fla.1971), and is intended to make clear that the reservation of the right to appeal a judgment based on the plea of no contest must be express and must identify the particular point of law being reserved; any issues not expressly reserved are waived. No direct appeal of a judgment based on a guilty plea is allowed. It was not intended that this rule affect the substantive law governing collateral review.
Subdivision (b)(2) replaces former rule 6.2. Specific reference is made to rule 9.110(d) to emphasize that criminal appeals are to be prosecuted in substantially the same manner as other cases. Copies of the notice, however, must be served on both the state attorney and the attorney general. The time for taking an appeal has been made to run from the date judgment is rendered to 30 days after an order imposing sentence is rendered or otherwise reduced to writing. The former rule provided for appeal within 30 days of rendition of judgment or within 30 days of entry of sentence. The advisory committee debated the intent of the literal language of the former rule. Arguably, under the former rule an appeal could not be taken by a defendant during the "gap period" that occurs when sentencing is postponed more than 30 days after entry of judgment. The advisory committee concluded that no purpose was served by such an interpretation because the full case would be reviewable when the "gap" closed. This modification of the former rule promotes the policies underlying Williams v. State, 324 So.2d 74 (Fla.1975), in which it was held that a notice of appeal prematurely filed should not be dismissed, but held in abeyance until it becomes effective. This rule does not specifically address the issue of whether full review is available if re-sentencing occurs on order of a court in a collateral proceeding. Such cases should be resolved in accordance with the underlying policies of these rules. Compare Wade v. State, 222 So.2d 434 *646 (Fla. 2d DCA 1969), with Neary v. State, 285 So.2d 47 (Fla. 4th DCA 1973). If a defendant appeals a judgment of conviction of a capital offense before sentencing and sentencing is anticipated, the district court of appeal (as the court then with jurisdiction) should hold the case in abeyance until the sentence has been imposed. If the death penalty is imposed, the district court of appeal should transfer the case to the supreme court for review. See § 921.141(4), Fla. Stat. (1975); Fla. R.App. P. 9.040(b).
Subdivision (b)(3) governs the service of briefs. Filing should be made in accordance with rule 9.420.
Subdivision (c)(1) lists the only matters that may be appealed by the state, but it is not intended to affect the jurisdiction of the supreme court to entertain by certiorari interlocutory appeals governed by rule 9.100, or the jurisdiction of circuit courts to entertain interlocutory appeals of pretrial orders from the county courts. See State v. Smith, 260 So.2d 489 (Fla.1972). No provision of this rule is intended to conflict with a defendant's constitutional right not to be placed twice in jeopardy, and it should be interpreted accordingly. If there is an appeal under item (A), a motion for a stay of the lower tribunal proceeding should be liberally granted in cases in which there appears to be a substantial possibility that trial of any non-dismissed charges would bar prosecution of the dismissed charges if the dismissal were reversed, such as in cases involving the so-called "single transaction rule." Item (E) refers to the popularly known "speedy trial rule," and items (F), (G), and (H) track the balance of state appellate rights in section 924.07, Florida Statutes (1975).
Subdivision (c)(2) parallels subdivision (b)(2) regarding appeals by defendants except that a maximum of 15 days is allowed for filing the notice. An appeal by the state stays further proceedings in the lower tribunal only if an order has been entered by the trial court.
Subdivision (c)(3) governs the service of briefs.
Subdivision (d) applies rule 9.200 to criminal appeals and sets forth the time for preparation and service of the record, and additional matters peculiar to criminal cases. It has been made mandatory that the original record be held by the lower tribunal to avoid loss and destruction of original papers while in transit. To meet the needs of appellate counsel for indigents, provision has been made for automatic transmittal of a copy of the record to the public defender appointed to represent an indigent defendant on appeal, which in any particular case may be the public defender either in the judicial circuit where the trial took place or in the judicial circuit wherein the appellate court is located. See § 27.51(4), Fla. Stat. (1975). Counsel for a non-indigent defendant may obtain a copy of the record at the cost prescribed by law. At the present time, section 28.24(13), Florida Statutes (1975), as amended by chapter 77 284, § 1, Laws of Florida, prescribes a cost of $1 per page.
To conserve the public treasury, appeals by indigent defendants, and other criminal defendants in cases in which a free transcript is provided, have been specially treated. Only the essential portions of the transcript are to be prepared. The appellant must file a statement of the judicial acts to be reviewed on appeal and the parties are to file and serve designations of the relevant portions of the record. (This procedure emphasizes the obligation of trial counsel to cooperate with appellate counsel, if the two are different, in identifying alleged trial errors.) The statement is necessary to afford the appellee an opportunity to make a reasonable determination *647 of the portions of the record required. The statement should be sufficiently definite to enable the opposing party to make that determination, but greater specificity is unnecessary. The statement of judicial acts contemplated by this rule is not intended to be the equivalent of assignments of error under former rule 3.5. Therefore, an error or inadequacy in the statement should not be relevant to the disposition of any case. In such circumstances, the appropriate procedure would be to supplement the record under rule 9.200(f) to cure any potential or actual prejudice. Either party may move in the lower tribunal to strike unnecessary portions before they are prepared or to expand the transcript. The ruling of the lower tribunal on such motions is reviewable by motion to the court under rule 9.200(f) if a party asserts additional portions are required.
Subdivision (e) replaces former rule 6.15. Subdivision (e)(1) governs if an appeal is taken by a defendant and permits a motion to grant post-trial release pending appeal to be heard although a notice of appeal has not yet been filed. The lower tribunal may then grant the motion effective on the notice being filed. This rule is intended to eliminate practical difficulties that on occasion have frustrated the cause of justice, as in cases in which a defendant's attorney has not prepared a notice of appeal in advance of judgment. Consideration of such motions shall be in accordance with section 903.132, Florida Statutes (Supp. 1976), and Florida Rule of Criminal Procedure 3.691. This rule does not apply if the judgment is based on a guilty plea because no right to appeal such a conviction is recognized by these rules.
Subdivision (e)(2) governs if the state takes an appeal and authorizes release of the defendant without bond, if charged with a bailable offense, unless the lower tribunal for good cause orders otherwise. The "good cause" standard was adopted to ensure that bond be required only in rare circumstances. The advisory committee was of the view that because the state generally will not be able to gain a conviction unless it prevails, the presumed innocent defendant should not be required to undergo incarceration without strong reasons, especially if a pre-trial appeal is involved. "Good cause" therefore includes such factors as the likelihood of success on appeal and the likelihood the defendant will leave the jurisdiction in light of the current status of the charges against the defendant.
Subdivision (e)(3) retains the substance of former rules 6.15(b) and (c). The lower tribunal's order must contain a statement of facts as well as the reasons for the action taken, in accordance with Younghans v. State, 90 So.2d 308 (Fla.1956).
Subdivision (e)(4) allows review only by motion so that no order regarding post-trial relief is reviewable unless jurisdiction has been vested in the court by the filing of a notice of appeal. It is intended that the amount of bail be reviewable for excessiveness.
Subdivision (f) interacts with rule 9.110(h) to allow review of multiple judgments and sentences in 1 proceeding.
Subdivision (g) sets forth the procedure to be followed if there is a summary denial without hearing of a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850. This rule does not limit the right to appeal a denial of such a motion after hearing under rule 9.140(b)(1)(C).
1980 Amendment. Although the substance of this rule has not been changed, the practitioner should note that references in the 1977 committee notes to supreme court jurisdiction to review non-final *648 orders that would have been appealable if they had been final orders are obsolete because jurisdiction to review those orders no longer reposes in the supreme court.
1984 Amendment. Subdivision (b)(4) was added to give effect to the administrative order entered by the supreme court on May 6, 1981 (6 Fla. L. Weekly 336), which recognized that the procedures set forth in the rules for criminal appeals were inappropriate for capital cases.
1992 Amendment. Subdivision (b)(3) was amended to provide that, in cases in which public funds would be used to prepare the record on appeal, the attorney of record would not be allowed to withdraw until substitute counsel has been obtained or appointed.
Subdivision (g) was amended to provide a specific procedure to be followed by the courts in considering appeals from summary denial of Florida Rule of Criminal Procedure 3.800(a) motions. Because such motions are in many respects comparable to Florida Rule of Criminal Procedure 3.850 motions, it was decided to use the available format already created by existing subdivision (g) of this rule. Because a Florida Rule of Criminal Procedure 3.800(a) motion does not have the same detailed requirements as does a Florida Rule of Criminal Procedure 3.850 motion, this subdivision also was amended to require the transmittal of any attachments to the motions in the lower court.
1996 Amendment. The 1996 amendments are intended to consolidate and clarify the rules to reflect current law unless otherwise specified.
Rule 9.140(b)(2)(B) was added to accurately reflect the limited right of direct appeal after a plea of guilty or nolo contendere. See Robinson v. State, 373 So.2d 898 (Fla.1979), and Counts v. State, 376 So.2d 59 (Fla. 2d DCA 1979).
New subdivision (b)(4) reflects Lopez v. State, 638 So.2d 931 (Fla.1994). A defendant may cross-appeal as provided, but if the defendant chooses not to do so, the defendant retains the right to raise any properly preserved issue on plenary appeal. It is the committee's intention that the 10-day period for filing notice of the cross-appeal should be interpreted in the same manner as in civil cases under rule 9.110(g).
Rule 9.140(b)(6)(E) adopts Florida Rule of Criminal Procedure 3.851(b)(2) and is intended to supersede that rule. See Fla. R. Jud. Admin. 2.135. The rule also makes clear that the time periods in rule 9.140(j) do not apply to death penalty cases.
The revised rules 9.140(e)(2)(D) and 9.140(e)(2)(E) are intended to supersede Brown v. State, 639 So.2d 634 (Fla. 5th DCA 1994), and allow non-indigent defendants represented by counsel, and the state, to order just the original transcript from the court reporter and to make copies. However, the original and copies for all other parties must then be served on the clerk of the lower tribunal for inclusion in the record. The revised rule 9.140(e)(2)(F) also allows chief judges for each circuit to promulgate an administrative order requiring the lower tribunal clerk's office to make copies of the transcript when the defendant is indigent. In the absence of such an administrative order, the court reporter will furnish an original and copies for all parties in indigent appeals.
Rule 9.140(j)(3) imposes a two-year time limit on proceedings to obtain delayed appellate review based on either the ineffectiveness of counsel on a prior appeal or the failure to timely initiate an appeal by appointed counsel. The former was previously *649 applied for by a petition for writ of habeas corpus in the appellate court and the latter by motion pursuant to Florida Rule of Criminal Procedure 3.850 in the trial court. Because both of these remedies did not require a filing fee, it is contemplated that no fee will be required for the filing of petitions under this rule. Subdivision (j)(3)(B) allows two years "after the conviction becomes final." For purposes of the subdivision a conviction becomes final after issuance of the mandate or other final process of the highest court to which direct review is taken, including review in the Florida Supreme Court and United States Supreme Court. Any collateral review shall not stay the time period under this subdivision. Subdivision (j)(3)(C) under this rule makes clear that defendants who were convicted before the effective date of the rule will not have their rights retroactively extinguished but will be subject to the time limits as calculated from the effective date of the rule unless the time has already commenced to run under rule 3.850.
Rule 9.140(j)(5) was added to provide a uniform procedure for requesting belated appeal and to supersede State v. District Court of Appeal of Florida, First District, 569 So.2d 439 (Fla.1990). This decision resulted in there being two procedures for requesting belated appeal: Florida Rule of Criminal Procedure 3.850 when the criminal appeal was frustrated by ineffective assistance of trial counsel, id.; and habeas corpus for everything else. See Scalf v. Singletary, 589 So.2d 986 (Fla. 2d DCA 1991). Experience showed that filing in the appellate court was more efficient. This rule is intended to reinstate the procedure as it existed prior to State v. District Court of Appeal, First District. See Baggett v. Wainwright, 229 So.2d 239 (Fla. 1969); State v. Meyer, 430 So.2d 440 (Fla. 1983).
In the rare case where entitlement to belated appeal depends on a determination of disputed facts, the appellate court may appoint a commissioner to make a report and recommendation.
2000 Amendment. Subdivision (b)(1)(B) was added to reflect the holding of State v. Schultz, 720 So.2d 247 (Fla.1998). The amendment to renumber subdivision (b)(1)(D), regarding appeals from orders denying relief under Florida Rules of Criminal Procedure 3.800(a) or 3.850, reflects current practice.
The committee added language to subdivision (b)(6)(B) to require court reporters to file transcripts on computer disks in death penalty cases. Death penalty transcripts typically are lengthy, and many persons review and use them over the years. In these cases, filing lengthy transcripts on computer disks makes them easier to use for all parties and increases their longevity.
The committee deleted the last sentence of subdivision (b)(6)(E) because its substance is now included in rule 9.141(a). The committee also amended and transferred subdivisions (i) and (j) to rule 9.141 for the reasons specified in the committee note for that rule.

Court Commentary
1996. Rule 9.140 was substantially rewritten so as to harmonize with the Criminal Appeal Reform Act of 1996 (CS/HB 211). The reference to unlawful sentences in rule 9.140(b)(1)(D) and (c)(1)(J) means those sentences not meeting the definition of illegal under Davis v. State, 661 So.2d 1193 (Fla.1995), but, nevertheless, subject to correction on direct appeal.

RULE 9.141. REVIEW PROCEEDINGS IN COLLATERAL OR POSTCONVICTION CRIMINAL CASES
*650 (a) Death Penalty Cases. This rule does not apply to death penalty cases.
(b) Appeals from Post-Conviction Proceedings Under Florida Rule of Criminal Procedure 3.800(a), or 3.850, or 3.853.
(1) Applicability of Civil Appellate Procedures. Appeal proceedings under this subdivision shall be as in civil cases, except as modified by this rule.
(2) Summary Grant or Denial of Motion Without Evidentiary Hearing.
(A) When a motion for post-conviction relief under rule 3.800(a), or 3.850, or 3.853 is granted or denied without an evidentiary hearing, the clerk of the lower tribunal shall transmit to the court, as the record, copies of the motion, response, reply, order on the motion, motion for rehearing, response, reply, order on the motion for rehearing, and attachments to any of the foregoing, together with the certified copy of the notice of appeal.
(B) Unless directed otherwise by the court, the clerk of the lower tribunal shall not index or paginate the record or send copies of the index or record to the parties.
(C) No briefs or oral argument shall be required, but any appellant's brief shall be filed within 15 days of the filing of the notice of appeal. The court may request a response from the appellee before ruling.
(D) On appeal from the denial of relief, unless the record shows conclusively that the appellant is entitled to no relief, the order shall be reversed and the cause remanded for an evidentiary hearing or other appropriate relief.
(3) Grant or Denial of Motion after Evidentiary Hearing.
(A) Transcription. In the absence of designations to the court reporter, the notice of appeal filed by an indigent pro se litigant in a rule 3.850 or 3.853 appeal after an evidentiary hearing shall serve as the designation to the court reporter for the transcript of the evidentiary hearing. Within 5 days of receipt of the notice of appeal, the clerk of the lower tribunal shall request the appropriate court reporter to transcribe the evidentiary hearing and shall send the court reporter a copy of the notice, the date of the hearing to be transcribed, the name of the judge, and a copy of this rule.
(B) Record.
(i) When a motion for post-conviction relief under rule 3.850 or 3.853 is granted or denied after an evidentiary hearing, the clerk of the lower tribunal shall index, paginate, and transmit to the court as the record, within 50 days of the filing of the notice of appeal, copies of the notice of appeal, motion, response, reply, order on the motion, motion for rehearing, response, reply, order on the motion for rehearing, and attachments to any of the foregoing, as well as the original transcript of the evidentiary hearing.
(ii) Appellant may direct the clerk to include in the record any other documents that were before the lower tribunal at the hearing. If the clerk is directed to include in the record a previously prepared appellate record involving the appellant, the clerk need not reindex or repaginate it.
(iii) The clerk of the lower tribunal shall serve copies of the record on the attorney general (or state attorney in appeals to the circuit court), all counsel appointed to represent indigent defendants on appeal, and any pro se indigent defendant. The clerk of the lower tribunal shall simultaneously serve copies of the index on all nonindigent defendants and, at their *651 request, copies of the record or portions of it at the cost prescribed by law.
(C) Briefs. Initial briefs shall be served within 30 days of service of the record or its index. Additional briefs shall be served as prescribed by rule 9.210.
(c) Petitions Seeking Belated Appeal or Alleging Ineffective Assistance of Appellate Counsel.
(1) Treatment as Original Proceedings. Review proceedings under this subdivision shall be treated as original proceedings under rule 9.100, except as modified by this rule.
(2) Forum. Petitions seeking belated appeal or alleging ineffective assistance of appellate counsel shall be filed in the appellate court to which the appeal was or should have been taken.
(3) Contents. The petition shall be in the form prescribed by rule 9.100, may include supporting documents, and shall recite in the statement of facts
(A) the date and nature of the lower tribunal's order sought to be reviewed;
(B) the name of the lower tribunal rendering the order;
(C) the nature, disposition, and dates of all previous proceedings in the lower tribunal and, if any, in appellate courts;
(D) if a previous petition was filed, the reason the claim in the present petition was not raised previously;
(E) the nature of the relief sought; and
(F) the specific acts sworn to by the petitioner or petitioner's counsel that constitute the alleged ineffective assistance of counsel or basis for entitlement to belated appeal, including in the case of a petition for belated appeal whether the petitioner requested counsel to proceed with the appeal.
(4) Time Limits.
(A) A petition for belated appeal shall not be filed more than 2 years after the expiration of time for filing the notice of appeal from a final order, unless it alleges under oath with a specific factual basis that the petitioner
(i) was unaware an appeal had not been timely filed or was not advised of the right to an appeal; and
(ii) should not have ascertained such facts by the exercise of reasonable diligence.
(B) A petition alleging ineffective assistance of appellate counsel shall not be filed more than 2 years after the conviction becomes final on direct review unless it alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel.
(C) Time periods under this subdivision shall not begin to run prior to January 1, 1997.
(5) Procedure.
(A) The petitioner shall serve copies of the petition on the attorney general and state attorney.
(B) The court may by order identify any provision of this rule that the petition fails to satisfy and, pursuant to rule 9.040(d), allow the petitioner a specified time to serve an amended petition.
(C) The court may dismiss a second or successive petition if it does not allege new grounds and the prior determination was on the merits, or if a failure to assert the grounds was an abuse of procedure.
(D) An order granting a petition for belated appeal shall be filed with the lower tribunal and treated as the notice of appeal, if no previous notice has been filed.

*652 Committee Notes
2000 Amendment. Rule 9.141 is a new rule governing review of collateral or postconviction criminal cases. It covers topics formerly included in rules 9.140(i) and (j). The committee opted to transfer these subjects to a new rule, in part because rule 9.140 was becoming lengthy. In addition, review proceedings for collateral criminal cases are in some respects treated as civil appeals or as extraordinary writs, rather than criminal appeals under rule 9.140.
Subdivision (a) clarifies that this rule does not apply to death penalty cases. The Supreme Court has its own procedures for these cases, and the committee did not attempt to codify them.
Subdivision (b)(2) amends former rule 9.140(i) and addresses review of summary grants or denials of post-conviction motions under Florida Rules of Criminal Procedure 3.800(a) or 3.850. Amended language in subdivision (b)(2)(A) makes minor changes to the contents of the record in such cases. Subdivision (b)(2)(B) addresses a conflict between Summers v. State, 570 So.2d 990 (Fla. 1st DCA 1990), and Fleming v. State, 709 So.2d 135 (Fla. 2d DCA 1998), regarding indexing and pagination of records. The First District requires clerks to index and paginate the records, while the other district courts do not. The committee determined not to require indexing and pagination unless the court directs otherwise, thereby allowing individual courts to require indexing and pagination if they so desire. Subdivision (b)(2)(B) also provides that neither the state nor the defendant should get a copy of the record in these cases, because they should already have all of the relevant documents. Subdivision (b)(2)(D) reflects current case law that the court can reverse not only for an evidentiary hearing but also for other appropriate relief.
Subdivision (b)(3) addresses review of grants or denials of post-conviction motions under rule 3.850 after an evidentiary hearing. Subdivision (b)(3)(A) provides for the preparation of a transcript if an indigent pro se litigant fails to request the court reporter to prepare it. The court cannot effectively carry out its duties without a transcript to review, and an indigent litigant will usually be entitled to preparation of the transcript and a copy of the record at no charge. See Colonel v. State, 723 So.2d 853 (Fla. 3d DCA 1998). The procedures in subdivisions (b)(3)(B) and (C) for preparation of the record and service of briefs are intended to be similar to those provided in rule 9.140 for direct appeals from judgments and sentences.
Subdivision (c) is a slightly reorganized and clarified version of former rule 9.140(j). No substantive changes are intended.
NOTES
[1] The legislation and our rule supersede our decision in Zeigler v. State, 654 So.2d 1162 (Fla.1995). Ironically, the trial court in Zeigler has recently acted to grant the DNA testing we denied. See Inmate Wins DNA Request, Miami Herald (Broward Edition), August 29, 2001, at B9.
[2] In addition to the overwhelming recommendation of the Committee to adopt an inclusive rule, several parties have filed comments that express concern with any attempt to exclude defendants who pled guilty from having access to DNA testing. The commentators' concern stem from events in Florida and nationwide, where innocent defendants pled guilty only to be exonerated later by DNA evidence. Notably, some of the commentators point to the recent Florida case of a mentally handicapped inmate, Jerry Frank Townsend, who was incarcerated for multiple murders, including several cases where he pled guilty. DNA tests exonerated Townsend of some of the murders, which prompted a review of each of his cases. Ultimately, Townsend's guilty pleas were vacated and he was released.
[3] There are also practical problems created by the majority's decision to pass. For example, the legislation provides a two-year time limit which the majority also embraces in its limited rule. Of course, inmates are not entitled to postconviction counsel to determine the potential impact or relevance of DNA evidence in a particular case, or to advise inmates of the availability of legal remedies concerning DNA. This factor alone will sharply limit use of the rule or statute. If you do not know about it or if your case is impacted you will not seek relief under the rule. But, assuming an inmate who is imprisoned through plea bargaining somehow becomes aware of DNA testing and that DNA testing may help prove his innocence, and that inmate actually goes to court, how will we then apply the two-year limit? In other words, if somehow, down the road we end up deciding in an actual case that it makes no difference whether the inmate was imprisoned through trial or plea bargaining, will not the two-year limitation have long expired and the issue mooted for all those inmates?