820 So.2d 1059 (2002)
Allen M. ZOLLMAN, a/k/a Allan M. Zollman, DOC # 350073, Appellant,
v.
STATE of Florida, Appellee.
No. 2D02-2265.
District Court of Appeal of Florida, Second District.
July 10, 2002.
*1060 PARKER, Judge.
On July 30, 1978, a woman was forced into her car by an assailant, driven to a remote area in Lakeland, and raped. Based on one partial fingerprint, one hair, and the victim's in-court identification, a jury determined that Allen Zollman was the woman's assailant. Zollman was sentenced to life plus thirty years in prison.
Twenty-three years later, Zollman filed a motion for postconviction DNA testing pursuant to newly enacted section 925.11, Florida Statutes (2001), and Florida Rule of Criminal Procedure 3.853. In this motion, Zollman sought DNA testing of various evidence collected at the time of the crime. The trial court summarily denied Zollman's motion as facially insufficient. We reverse and remand for further proceedings.
The record in this case is limited to the allegations in Zollman's motion. Zollman alleges that the victim testified at trial that she was attacked by a single assailant. This assailant, who had blond hair and gray eyes, drove the victim in her own car to a remote location where he raped her. According to the victim, her assailant ejaculated inside her. After the victim contacted the police on the night of the rape, she was taken to Lakeland Regional Hospital, where evidence was collected in a rape kit. The police also collected the victim's clothing. In addition, the police collected several cigarette butts from the scene of the rape. Zollman alleges that all of these items were turned over to the State Attorney's Office and remain in its possession.[1]
Some time after the attack, the victim identified Zollman as her assailant despite *1061 the fact that Zollman had brown hair and dark brown eyes rather than blond hair and gray eyes. The victim repeated this identification at Zollman's trial. Also at trial, a fingerprint expert testified that one partial fingerprint lifted from the outside of the victim's car belonged to Zollman. No fingerprints belonging to Zollman were found inside the victim's car despite the victim's testimony that her assailant actually drove her car. The inside of the victim's car contained numerous fingerprints belonging to neither the victim nor Zollman that were never otherwise identified. Another expert testified at trial that one hair "consistent with" Zollman's hair was found inside the victim's car. However, this expert admitted that he could not testify that the hair was Zollman's and that the main consistency between the collected hair and Zollman's hair was that they both came from a Caucasian. Hundreds of other hairs collected from inside the victim's car were never identified. Based on this evidence, the jury convicted Zollman of kidnaping, sexual battery, and robbery.
Zollman now seeks an order requiring DNA testing of the contents of the rape kit, the victim's clothing, and the cigarette butts. Zollman alleges that DNA testing was never performed on any of this evidence because such testing was not available in 1978. Zollman also alleges that he is innocent of these crimes, that he has always maintained his innocence, and that DNA testing will prove that the victim was mistaken in her identification of him as her assailant.
Rule 3.853(b) sets forth the requirements for a facially sufficient motion for postconviction DNA testing. To be facially sufficient, the defendant's motion must include:
(1) a statement of the facts relied on in support of the motion, including a description of the physical evidence containing DNA to be tested and, if known, the present location or last known location of the evidence and how it was originally obtained;
(2) a statement that the evidence was not tested previously for DNA, or a statement that the results of previous DNA testing were inconclusive and that subsequent scientific developments in DNA testing techniques likely would produce a definitive result;
(3) a statement that the movant is innocent and how the DNA testing requested by the motion will exonerate the movant of the crime for which the movant was sentenced, or a statement how the DNA testing will mitigate the sentence received by the movant for that crime;
(4) a statement that identification of the movant is a genuinely disputed issue in the case and why it is an issue or an explanation of how the DNA evidence would either exonerate the defendant or mitigate the sentence that the movant received;
(5) a statement of any other facts relevant to the motion; and
(6) a certificate that a copy of the motion has been served on the prosecuting authority.
Fla. R.Crim. P. 3.853(b). In this case, the trial court found that because the victim identified Zollman as her assailant and because of the existence of the partial fingerprint, DNA testing of the other evidence, if it still existed, would not exonerate Zollman. Therefore, the trial court found that Zollman's allegations under rule 3.853(b)(4) were insufficient. We disagree.
As we read rule 3.853(b), subsection four requires the defendant to allege sufficient facts to establish two things: first, that identification was a genuinely disputed issue at trial; and second, that the requested *1062 DNA testing will either exonerate the defendant or mitigate his sentence. Zollman has made sufficient allegations on both issues.
On the issue of whether identity was genuinely disputed, Zollman alleges that the victim initially described her assailant as having shoulder-length blond hair and gray eyes. Zollman has brown hair and dark brown eyes. In addition, Zollman alleges various irregularities in the line-up and identification procedures. Moreover, Zollman alleges that his sole defense at trial was misidentification.
Despite these allegations, the trial court found that identity was not "genuinely disputed" at trial because the victim had identified Zollman as her assailant. However, this finding ignores the fact that the purpose of section 925.11 and rule 3.853 is to provide defendants with a means by which to challenge convictions when there is a "credible concern that an injustice may have occurred and DNA testing may resolve the issue." In re Amendment to Fla. Rules of Criminal Procedure Creating Rule 3.853 (DNA Testing), 807 So.2d 633, 636 (Fla.2001) (Anstead, J., concurring). The supreme court has recognized that there is a substantial body of academic work challenging the reliability of eyewitness identifications in criminal cases. See McMullen v. State, 714 So.2d 368, 372 n. 6 (Fla.1998). Thus, the fact that the victim identified Zollman as her assailant at trial does not mean that identity was not genuinely disputed at trial for purposes of postconviction DNA testing.
Because Florida's DNA statute and rule are so new, there is little case law concerning what constitutes a sufficient allegation that identity was a genuinely disputed issue at trial. In the only published Florida case addressing this issue, the facts showed that the defendant had admitted to performing certain sexual acts on a minor. See Hartline v. State, 806 So.2d 595 (Fla. 5th DCA 2002). Because the defendant had not maintained his innocence but had, in fact, admitted to the crime, identity was not a genuinely disputed issue at trial. Id. Therefore, the motion was properly dismissed.
Cases from other states with a similar postconviction rule, however, make it clear that identity is a "genuinely disputed" issue when the only significant evidence connecting the defendant to the crime is the victim's identification of the defendant. See, e.g., People v. Johnson, No. 85134, ___ Ill.Dec. ___, ___ N.E.2d ___, 2002 WL 592153 (Ill. Apr.18, 2002) (allowing postconviction DNA testing when the victim initially failed to select the defendant from a series of mugshots, when the victim identified the defendant as her assailant only after seeing his mugshot several times, and when the only physical evidence tying the defendant to the crime was a few head hairs "consistent with" the victim's found in the defendant's car); People v. Barksdale, 327 Ill.App.3d 422, 261 Ill.Dec. 100, 762 N.E.2d 669 (2001) (finding the defendant entitled to postconviction DNA testing when the only evidence tying him to the crime was the victim's identification of him as her assailant); People v. Rokita, 316 Ill.App.3d 292, 249 Ill.Dec. 363, 736 N.E.2d 205 (2000) (same); People v. Dunn, 306 Ill.App.3d 75, 239 Ill.Dec. 37, 713 N.E.2d 568 (1999) (same). Here, as in those cases, the only significant evidence tying Zollman to the crimes at issue is the victim's identification of Zollman as her assailant. Accordingly, Zollman's allegation that identity was a "genuinely disputed" issue at trial is facially sufficient for purposes of rule 3.853(b)(4).
On the issue of whether the requested DNA testing will exonerate the defendant, the determination of whether the defendant's allegations are facially sufficient *1063 requires consideration of the facts of the crime itself and the other available evidence. Cases addressing this issue have uniformly held that DNA testing will not be permitted if the requested DNA testing would shed no light on the defendant's guilt or innocence. For example, in Galloway v. State, 802 So.2d 1173 (Fla. 1st DCA 2001), the trial court refused to order postconviction DNA testing because such testing would not establish that the defendant was not present at the crime scene with his codefendants. "The fact that only appellant's co-defendant's may have deposited DNA at the crime scene or on the body of the victim does not mean that appellant was not there." Id. at 1175. Similarly, in People v. Travis, 329 Ill. App.3d 280, 264 Ill.Dec. 785, 771 N.E.2d 489 (2002), the trial court refused to allow postconviction DNA testing because the defendant had admitted to committing the crimes with a codefendant; thus, the presence or absence of the defendant's DNA in the semen left at the scene would not conclusively establish that the defendant did not participate in the crimes. Likewise, in People v. Gholston, 297 Ill.App.3d 415, 231 Ill.Dec. 821, 697 N.E.2d 375 (1998), the court found that DNA testing would be irrelevant to any determination of the defendant's guilt or innocence because the victim had been sexually assaulted by at least six males in one evening and there was no testimony as to which males had actually ejaculated into her. Moreover, in Grauberger v. State, No. C1-00-979, 2001 WL 70027 (Minn.Ct.App. Jan.30, 2001), the court refused to order DNA testing because there had been no testimony at trial concerning whether the assailant had ejaculated into or onto the victim; thus, the DNA testing would not necessarily exonerate the defendant. Finally, in People v. Pugh, 288 A.D.2d 634, 732 N.Y.S.2d 673 (2001), the court refused to order DNA testing because the victim's rape kit had tested negative for seminal fluid; thus, further testing would not and could not exonerate the defendant.
In direct contrast with those cases, it is clear from Zollman's allegations in this case that the results of any DNA testing would bear on the question of his guilt or innocence. According to Zollman's motion, no individuals were present at the crime scene other than the victim and her assailant. The victim testified that her assailant ejaculated into her. Therefore, DNA testing of the contents of the victim's rape kit would show whether Zollman was the perpetrator of the sexual battery. Because there was only one assailant, if Zollman did not commit the sexual battery, he did not commit the kidnaping or robbery. Thus, DNA testing of the contents of the rape kit would bear directly on Zollman's guilt or innocence. Accordingly, Zollman's allegations on this issue are facially sufficient under rule 3.853(b)(4).
Because Zollman's motion is facially sufficient under the requirements of rule 3.853(b), we reverse and remand for further proceedings. On remand, the trial court must order the State to respond to Zollman's motion pursuant to rule 3.853(c)(2). The State's response should indicate whether the items sought to be tested still exist. See King v. State, 808 So.2d 1237, 1240 (Fla.2002) (affirming the dismissal of a 3.853 motion on the basis that the State had established that the evidence in question no longer existed). Only after considering the State's response may the trial court determine whether a hearing is necessary.[2]
*1064 Reversed and remanded for further proceedings.
WHATLEY and NORTHCUTT, JJ., Concur.
NOTES
[1] We recognize that the State Attorney's Office is rarely, if ever, the custodian of such evidence. It is more likely that these items, if they still exist, are either in the custody of the Lakeland Police Department or in the custody of the clerk of court if they were introduced into evidence. For purposes of this motion, this apparent error in Zollman's motion is irrelevant.
[2] We note that rule 3.853, unlike rule 3.850, does not allow the trial court to simply summarily deny the motion if the record conclusively shows that the defendant is not entitled to relief. Rather, if a rule 3.853 motion is facially sufficient, the trial court must order a response. See Fla. R.Crim. P. 3.853(c)(2). However, after considering the State's response, the trial court may either enter an order on the merits of the motion or set the motion for hearing. See Fla. R.Crim. P. 3.853(c)(3).