829 So.2d 249 (2002)
Toney KNIGHTEN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D02-79.
District Court of Appeal of Florida, Second District.
September 4, 2002.
*250 DAVIS, Judge.
Toney Knighten appeals the summary denial of his motion for postconviction DNA testing brought pursuant to Florida Rule of Criminal Procedure 3.853. Knighten seeks DNA testing of pubic hair found at the crime scene that was identified at the time of trial as being consistent with his pubic hair and that was heavily relied upon by the State in convicting him. He maintains that he is innocent of the crime and that the hair is not his. The trial court denied the motion as facially insufficient finding that Knighten had not adequately alleged either that identity was genuinely disputed or how the DNA would exonerate him. We disagree on both issues and therefore reverse and remand for further proceedings.
Knighten was convicted in 1982 after jury trial of burglary and two counts of sexual battery and was sentenced to life. The facts of the crime as testified to at trial by the two victims were that a black man unknown to either victim broke into the trailer they shared, forced them into the bedroom, raped both of them, and then fled the scene. At trial both victims identified Knighten as their attacker. In support of the victims' testimony, the State also offered testimony that pubic hair found in the bedroom where the rape occurred could have been Knighten's. It appears that the consistency was based primarily on the determination that the pubic hair was Negroid. (This had additional significance because the two victims were white.) No DNA testing was available at the time, and based on a microscopic visual inspection, the expert could state only that the hair could be Knighten's.
The defense's case relied entirely on a theory of misidentification. Both victims admitted that they had originally identified another man as their attacker and that they had picked this man out of a photo-pak which included a photograph of Knighten. The two only identified Knighten after a show-up conducted several days later. Both victims also acknowledged that there were other inconsistencies between their description of their attacker and Knighten's actual appearance.
In order to rebut the misidentification defense, the State relied heavily on the pubic hair. In closing argument, the Assistant State Attorney made the following argument:
Now, I've saved the best for last, the most important corroborative evidence that we have in this case ... its [sic] the evidence you got toward the end of the day, the evidence from Pat Lasco ... She told you that the two Negroid hairs taken from the floor of the bedroom where the attack occurred, that those two hairs matched in characteristics the pubic hairs of the defendant, Toney Knighten. She also told you that those two pubic hairs could have originated from Toney Knighten. No emotionalism, no room for mistake. Ask yourself what is the probability that someone with pubic hairs exactly like Toney Knighten's was in that trailer in that bedroom and on that carpet. Its [sic] not very likely.
Now, just briefly we have five points of direct testimony that is reliable enough in itself ... Last and most important, the characteristics of the pubic hairs in the bedroom are identical with the characteristics of the defendant, Toney Knighten's.
So, when [defense counsel] says our identification evidence is solely based on witness identification, that's a totally incorrect *251 statement. He talks about the chances of mistaken identity. I would ask you to consider what the chances of mistaken identity are when you have matchingexactly the same pubic hairs.
Knighten now seeks DNA testing of that hair to determine if in fact it is his.
Rule 3.853[1] sets forth the requirements for a facially sufficient motion for postconviction DNA testing. In order to be facially sufficient the motion must include the following:
(1) a statement of the facts relied on in support of the motion, including a description of the physical evidence containing DNA to be tested and, if known, the present location or last known location of the evidence and how it originally was obtained;
(2) a statement that the evidence was not tested previously for DNA, or a statement that the results of previous DNA testing were inconclusive and that subsequent scientific developments in DNA testing techniques likely would produce a definitive result;
(3) a statement that the movant is innocent and how the DNA testing requested by the motion will exonerate the movant of the crime for which the movant was sentenced, or a statement how the DNA testing will mitigate the sentence received by the movant for that crime;
(4) a statement that identification of the movant is a genuinely disputed issue in the case and why it is an issue or an explanation of how the DNA evidence would either exonerate the defendant or mitigate the sentence that the movant received;
(5) a statement of any other facts relevant to the motion; and
(6) a certificate that a copy of the motion has been served on the prosecuting authority.
The trial court found that Knighten's motion was insufficient in two regards: Knighten had failed to adequately allege that identity was genuinely in dispute, and he had failed to adequately allege that the DNA testing would exonerate him.
With regard to identity, we find it difficult to imagine circumstances under which identity could be any more genuinely disputed than it was here. We have recently rejected the trial court's rationale that identity was not disputed simply because the victim identified the movant at trial. See Zollman v. State, 820 So.2d 1059 (Fla. 2d DCA 2002). Such a reading of the rule ignores both the rule's purpose and the general problems with eyewitness identification testimony. See id. In the instant case, there were significant problems with the eyewitness identification and no corroborating evidence other than the now challenged hair. The motion is facially sufficient on this point.
Whether Knighten has adequately alleged how the DNA testing will exonerate him is a more difficult question. It is unclear exactly what standard must be applied here. The rule states only that the movant must allege how the DNA will "exonerate" him. It does not define "exonerate" or provide a standard to be applied. Once a motion has met this threshold requirement, the rule then requires the trial court to determine "whether there is a reasonable probability that the movant would have been acquitted ... if the DNA evidence had been admitted at trial."
We conclude that in order for the rule (and statute) to be internally consistent the same standard must be applied at both *252 steps of the procedure. Therefore we hold that a claim is facially sufficient with regard to the exoneration issue if the alleged facts demonstrate that there is a reasonable probability that the defendant would have been acquitted if the DNA evidence had been admitted at trial. We believe that this reading of the rule and statute is consistent with their purpose which, as we recently noted, "is to provide defendants with a means by which to challenge convictions when there is `credible concern that an injustice may have occurred and DNA testing may resolve the issue.'" Zollman, 820 So.2d 1059 (quoting In re Amendment to Fla. Rules of Criminal Procedure Creating Rule 3.853 (DNA Testing), 807 So.2d 633, 636 (Fla.2001) (Anstead, J., concurring)).
We further conclude that Knigthen has made a sufficient showing as to this issue. Given the significant problems with the victims' testimony and the State's heavy reliance on the hair at trial, we conclude that there is a reasonable probability that Knighten would have been acquitted had DNA evidence demonstrated that the hair was not his. We therefore reverse and remand for further proceedings consistent with this opinion and the requirements of the rule.
Reversed and remanded.
CASANUEVA and STRINGER, JJ., concur.
NOTES
[1] The rule mirrors the language of section 925.11, Florida Statutes (2001), in which the legislature provided for postconviction DNA testing.