879 So.2d 51 (2004)
Joseph Robert SPAZIANO, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-2657.
District Court of Appeal of Florida, Fifth District.
July 9, 2004.
Rehearing Denied August 3, 2004.
Terrence E. Kehoe, Law Office of Terrence E. Kehoe, Orlando, and James M. *52 Russ, Law Offices of James M. Russ, P.A., Orlando, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Kenneth S. Nunnelley, Senior Assistant Attorney General, Daytona Beach, for Appellee.
PER CURIAM.
Joseph Robert Spaziano appeals an order denying his request for an evidentiary hearing during which the State would be required to prove its compliance with an earlier order granting his motion for postconviction deoxyribonucleic acid, ("DNA"), testing of certain evidence. Spaziano asserts he was denied due process of law because once the lower court had made the initial determination that his motion for post-conviction DNA testing was sufficient and ordered testing of certain identified objects, a successor judge should not be permitted to short cut that process.
Twenty-nine years ago, Spaziano was tried and convicted in Orange County of forcible carnal knowledge and aggravated battery in violation of sections 794.01 and 784.05, Florida Statutes (1975). A complete transcript of the trial was not provided, but from the record the following facts can be gleaned: The victim was abducted by two unknown men who sexually assaulted her in their truck and at a house in a wooded area. The victim was then taken to another location where one of the men strangled her with his belt, lacerated her neck and one of her eyes with a knife and abandoned her. Although suffering from life-threatening injuries, she regained consciousness and walked to a road where she found help. After being treated for injuries, the victim underwent a pelvic examination which included testing of vaginal, rectal and oral smears. The medical examiner who conducted these tests opined that there was no evidence that the victim had had recent sexual intercourse because the pelvic examination was normal and the tests for the presence of sperm were negative. This testimony was presented by the defense at trial. Apparently, however, the jury believed the testimony of the victim which was corroborated by other witnesses. Spaziano was subsequently sentenced to life imprisonment and a consecutive five-year imprisonment. His appeal to the Fourth District Court of Appeal was per curiam affirmed. Spaziano v. State, 348 So.2d 980 (Fla. 4th DCA), cert. denied, 352 So.2d 174 (Fla.1977).
Twenty-seven years after his conviction, Spaziano filed a motion for postconviction DNA testing of certain evidence collected during the police investigation. § 925.11, Fla. Stat. (2002); Fla. R.Crim. P. 3.853. Spaziano requested that certain items of physical evidence collected from the victim during police investigation be DNA tested. The lower court, by order dated December 6, 2002, granted Spaziano's motion for postconviction DNA testing, finding that physical evidence containing DNA may still exist, that the results of the DNA testing of the same would be admissible at a future hearing and that there is a reasonable probability Spaziano would be acquitted if the alleged DNA evidence had been admitted at trial. As to the last finding, the lower court reasoned that since the victim testified at trial that she was assaulted by two unknown persons, the presence of DNA from two unknown persons as well as the absence of Spaziano's DNA would tend to exonerate Spaziano. While we question the lower court's finding on the issue of whether DNA testing would tend to exonerate Spaziano,[1] we recognize that the State did not *53 appeal the lower court's order granting Spaziano's motion for postconviction DNA testing. Instead, it appears the State made some attempt to comply with the lower court's order granting Spaziano's motion. Specifically, the State alleges that it attempted to ascertain the location of the evidence ordered by the lower court to be DNA tested, but that the only item found was a blood-stained long-sleeved flowered shirt; that otherwise, it appears all of the evidence held by the Orange County Sheriff's office had been destroyed on July 1, 1977. DNA testing from various cuttings of the long-sleeved flowered shirt revealed only that "a partial female DNA profile ... was obtained" and that "[t]he partial profiles obtained in all of the above cuttings were consistent with each other at the loci in which data was obtained." The DNA testing report requested that a DNA standard from the victim be submitted for comparison purposes. The State then filed a notice of compliance with the order granting Spaziano's motion for postconviction DNA testing. Attached to the State's notice of compliance are e-mails between the State and the Orange County Evidence Supervisor and other employees of the Orange County Sheriff's department, as well as copies of facsimiles showing that evidence in Spaziano's case had been destroyed without specifying the evidence destroyed. Some of the State's attachments are illegible.
Spaziano disputed the State's assertion that it had complied with the lower court's order granting his motion for postconviction DNA testing and requested an evidentiary hearing during which admissible evidence, by sworn testimony and tangible evidence from live witnesses would be presented by the State as proof of its allegations of compliance. Spaziano further requested that the State obtain and submit a DNA standard in the form of blood samples from the victim, that the State be otherwise required to comply with the earlier order granting DNA testing of the remaining items, and that defense counsel be granted an order authorizing certain discovery to ensure compliance. An assistant state attorney advised the court at a subsequent hearing that "it appearsand I'm not saying this is true, I'm not asking the court to make a finding. But what I discovered and came to a dead end was, it appears those items have been destroyed."
The lower court subsequently denied Spaziano's requests for an evidentiary *54 hearing, for the State to obtain a DNA standard in the form of blood samples from the victim and for an order authorizing certain discovery.
The lower court's denial of Spaziano's request for an evidentiary hearing is not supported by case law. See, e.g., Zollman v. State, 820 So.2d 1059 (Fla. 2d DCA 2002) (holding that postconviction relief petitioner, who twenty-three years after his conviction requested DNA testing of certain items of evidence, was entitled to an evidentiary hearing to address issue of whether testable evidence still existed); see also Marsh v. State, 852 So.2d 945 (Fla. 2d DCA 2003) (holding that the trial court was required to conduct hearing on defendant's motion for postconviction DNA testing after the state denied having any physical evidence suitable for DNA testing); Borland v. State, 848 So.2d 1288 (Fla. 2d DCA 2003) (holding that if the state's response to defendant's motion for DNA testing creates a factual dispute, the trial court should conduct an evidentiary hearing to resolve that dispute). Cf. King v. State, 808 So.2d 1237, 1240-41 (Fla.2002) (affirming the dismissal of a motion for DNA testing when the trial court had conducted a hearing at which custodial witnesses testified that the evidence to be tested no longer existed).
As for Spaziano's request for the State to obtain a DNA standard in the form of blood or other samples from the victim, we find no basis under the facts of this case to justify granting that request. Spaziano acknowledges that normally an individual who is not a criminal defendant should not be required to submit to a physical examination. E.g., State v. Smith, 260 So.2d 489, 491 (Fla.1972) (recognizing that no right is held more sacred, or is more carefully guarded than the right of an individual to the possession and control of his own person, free from all restraint or interference of others); State v. Brewster, 601 So.2d 1289 (Fla. 5th DCA 1992) (quashing an order requiring victim to submit to blood test). Nevertheless, he urges this court to find that there are circumstances so compelling in his case that he would be deprived due process rights unless the victim is compelled to submit a DNA standard. We do not agree that the circumstances are compelling. The DNA testing of the victim's blood-stained, long-sleeved flowered shirt established that the blood found on the shirt came from the same female source. This female source was most likely the victim, herself, as there has never been a claim that a second female was involved or even present in the offense. Indeed, Spaziano has never suggested that the blood found on the shirt was not that of the victim's. In any event, confirmation that the blood on the shirt came from the victim hardly exonerates Spaziano.
Lastly, Spaziano contends that he is entitled to engage in discovery to ensure compliance with the December 6, 2002 order granting his motion for postconviction DNA testing. Although no reported cases have been found discussing discovery during postconviction proceedings dealing with DNA and rule 3.853, cases discussing discovery during a rule 3.850 postconviction proceeding may lend some guidance. Discovery during a rule 3.850 postconviction proceeding is not automatically allowed. The lower court may allow discovery into matters which are relevant and material, and where the discovery is permitted the court may place limitations on the sources and scope. E.g., State v. Lewis, 656 So.2d 1248 (Fla.1994). The lower court, in deciding whether to allow this limited form of discovery, shall consider the issues presented, the elapsed time between the conviction and the postconviction hearing, any burdens placed on the opposing party and witnesses, alternative *55 means of securing the evidence, and any other relevant facts. Id. at 1250. On review of an order denying or limiting discovery it will be the moving party's burden to show that the lower court abused its discretion. Id.
The assistant state attorney's representation to the trial court that most of the evidence had been destroyed was not unqualified and it is unknown as to the efforts expended by custodians to find the evidence; nor were all of the documents presented by the State showing destruction legible. It is our view that Spaziano should be entitled to engage in discovery to verify that the evidence no longer exists, but that the discovery should be limited by the standards established in Lewis, infra.
We vacate the order denying an evidentiary hearing and remand for the imposition of limitations on discovery leading to an evidentiary hearing. We affirm the denial of the request to require the victim to submit a DNA standard.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
PETERSON, GRIFFIN and PLEUS, JJ., concur.
NOTES
[1] See, e.g., Zollman v. State, 820 So.2d 1059 (Fla. 2d DCA 2002) (acknowledging that DNA testing will not be permitted if the requested DNA testing would shed no light on the defendant's guilt or innocence, citing as an example one court that refused to order DNA testing because the victim's rape kit had tested negative for seminal fluid, thus, further testing would not and could not exonerate the defendant); Galloway v. State, 802 So.2d 1173 (Fla. 1st DCA 2001) (holding that inmate, who had been convicted along with two co-defendants of robbery and sexual battery, was not entitled to postconviction DNA testing, even though he alleged that his DNA would not match DNA evidence found at scene of crime and on body of victim, since absence of DNA match would not demonstrate that he was not present at scene and participating with his co-defendants in the commission of the crimes, so as to exonerate him of the crimes for which he was convicted); see also Hitchcock v. State, 866 So.2d 23, 27 (Fla.2004) (finding postconviction DNA testing is not intended to be a fishing expedition). Cf. Zollman, 820 So.2d at 1059-63 (holding that results of DNA testing, requested by defendant twenty-three years after his conviction for kidnaping, sexual battery, and robbery, would bear on the question of his guilt or innocence, as would support defendant's request for such testing, since there were no individuals present at crime scene other than victim and her assailant, victim testified that her assailant ejaculated into her, so DNA testing of the contents of the victim's rape kit would show whether defendant was the perpetrator of sexual battery, and because there was only one assailant, if defendant did not commit sexual battery, he did not commit kidnaping or robbery).