929 So.2d 34 (2006)
George Greg REDDICK, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-1853.
District Court of Appeal of Florida, Fourth District.
April 12, 2006.
Rehearing Denied June 8, 2006.
Patsy Zimmerman and Bruce L. Udolf of Ruden, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellant.
*35 Charles J. Crist, Jr., Attorney General, Tallahassee, and August A. Bonavita, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
The trial court denied the appellant's motion for postconviction DNA testing of evidence without a hearing, concluding that there was no reasonable probability that the movant would be acquitted or that he would have received a lesser sentence had the DNA testing occurred. We reverse, concluding that the appellant has alleged a facially sufficient claim.
The appellant, George Reddick, was convicted in 1985 of first degree murder and sexual battery of a seven-year-old girl who was staying in the same home as Reddick and several other people. No physical evidence was found linking Reddick to the crime. According to Reddick's motion, the sole testimony against him was the questionable identification of the victim's sister who testified that she saw Reddick take the victim out of a window. However, this testimony was equivocal, as the witness apparently at first denied seeing anything, and at another time named another individual. Reddick maintained his innocence of the crime and asserted that another occupant of the home was the likely perpetrator.
In 2003, Reddick filed his motion for DNA testing pursuant to Florida Rule of Criminal Procedure 3.853. He recited the detailed facts and investigation of the case and listed the evidence for which he sought DNA testing. He also maintained his innocence and that the identity of the perpetrator was contested. He noted that in 1985 DNA testing was not available and none of the items had been tested other than for fingerprint analysis and semen analysis. Those tests failed to produce any results.
Reddick listed four categories of items to be tested for DNA: (1) his clothing; (2) items found near the victim's body, including beer cans, a plastic bottle, and a cup; (3) sweepings of the victim's body, consisting of swabs of the vagina, rectum, and mouth; scalp hair, and fingernail clippings; and (4) the victim's clothing, including her pajama bottoms, panties, etc. As to his clothing, he stated that if DNA testing revealed no skin cells from the victim, it would exonerate him, as such cells would have to be on his clothing if he lifted her out of the house as the victim's sister testified. As to the items surrounding the victim's body, they might reveal that the victim was penetrated by a foreign object. DNA testing which did not reveal any of Reddick's DNA on such objects would create a reasonable probability that he was not in the area and did not use any of the objects to rape or murder the child. With respect to the victim's clothing, he alleged that if they revealed no DNA from Reddick, this too would exonerate him of any rape, because skin cells would be present on the victim's pajamas if the perpetrator forcibly removed them, as was the testimony by experts. Finally, as to the victim's swabbings, these may reveal the DNA of the perpetrator, given the number of wounds and abrasions on the victim, particularly with respect to the fingernail clippings. Further, the rape of the victim would create DNA evidence, even if no semen was present.
The state responded, admitting the existence of the evidence sought to be tested. However, it claimed that Reddick's motion simply amounted to speculation that the clothing would have any DNA evidence on it or that the swabs would reveal any DNA. It suggested that the testing of Reddick's own clothing would not offer probative evidence in that the absence of the victim's DNA would be irrelevant. Finally, *36 it also questioned the probative value of finding the victim's DNA on the bottles and cups around the victim's body.
Without conducting an evidentiary hearing, the court denied the motion. The court found that the items were available for testing and that the results would likely be admissible at trial. However, it concluded that there was no reasonable probability that Reddick would be acquitted or would receive a lesser sentence, adopting the state's response. It did not refer to the trial transcript or other portions of the record to support its conclusion.
In denying the motion without a hearing, the court must have assumed that it was legally insufficient for failing to show how the evidence would exonerate Reddick or lessen his sentence. However, as in Schofield v. State, 861 So.2d 1244 (Fla. 2d DCA 2003), we conclude that the motion was facially sufficient and alleged how he would be exonerated, at least as to some of the categories of evidence. Identity was a disputed issue at trial, given the questionable eyewitness identification and the state's failure in its responses to refute that claim. See Zollman v. State, 820 So.2d 1059 (Fla. 2d DCA 2002). With respect to the swabs of the victim's body and her clothes, the presence of the perpetrator's DNA is likely, as she was brutally beaten and sexually assaulted. If DNA testing confirms the presence of DNA of someone other than Reddick from the vagina, rectum, mouth or fingernail swabs, those results surely would create a reasonable probability that Reddick would be acquitted of the charges. Id. at 1062-63. Although the state contends that there is no reason to suspect that testable skin cells or DNA would be found, that is not the criteria. What rule 3.853 requires the court to find is "[w]hether it has been shown that physical evidence that may contain DNA still exists." Fla. R.Crim. P. 3.853(c)(5)(A) (emphasis added). The court made that finding in its order.
As to DNA testing of Reddick's clothing, we agree that Reddick has failed to show how there would be a reasonable probability that he would be acquitted if the victim's DNA were not found on his clothing. Reddick has presented nothing to show that testable skin cells or other material would necessarily transfer to the clothing. Further, Reddick admits that his clothing was not delivered to the police until sometime significantly after the commencement of the investigation. Even if there was no evidence of the victim's DNA on Reddick's clothing, given the passage of time and the possibility that the clothes were not in the same condition as they were on the night of the incident, it is apparent that this evidence would not reasonably result in an acquittal.
We also agree that Reddick did not adequately explain why the testing of the beer bottle, cup, and other material found around the body would exonerate him. The victim was found under a bush. No fingerprints were found on any of the surrounding items, nor were any of them tied to either the rape or the murder. In fact, there is nothing in the motion or the record before us which would indicate that these items were in any way connected to the crime, and instead were merely present under the bush when the body was found. We thus conclude that the motion was legally insufficient as to these items.
We therefore reverse and remand for further proceedings as the trial court erred in concluding that the motion was facially insufficient as to the testing of the victim's body sweepings and clothing. Should the trial court conclude on remand that the trial transcript conclusively demonstrates that identity was not an issue or that Reddick will not be exonerated by *37 DNA testing based upon the trial evidence, then the court should include that evidence in the record for appellate review. See Riley v. State, 851 So.2d 811 (Fla. 2d DCA 2003). If it cannot so conclude, then it must either conduct an evidentiary hearing on the issue or enter an order granting the motion as to the victim's clothing and body sweepings, as the state concedes the existence and testability of the victim's body sweepings and clothing.
STONE and MAY, JJ., concur.