

DA 09-0400

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 97

STEPHEN PATRICK HAFFEY,

   Petitioner and Appellant,

  v.

STATE OF MONTANA,

   Respondent and Appellee.

APPEAL FROM:  District Court of the Fourth Judicial District,
        In and For the County of Missoula, Cause No. DV 09-351
        Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Stephen Patrick Haffey, (self-represented litigant); Shelby, Montana

    For Appellee:

    Hon. Steve Bullock, Montana Attorney General; C. Mark Fowler,
    Assistant Attorney General; Helena, Montana

    Fred Van Valkenburg, Missoula County Attorney; Missoula, Montana

        Submitted on Briefs: March 31, 2010

              Decided: May 4, 2010

Filed:

    _____
          Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Stephen Haffey appeals the order of the District Court for the Fourth Judicial District, Missoula County, denying his petition for postconviction DNA testing.

¶2 The sole issue on appeal is whether the District Court erred in dismissing Haffey's petition. We affirm, with a minor clarification, and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Haffey was convicted in 2007 of felony assault with a weapon and driving under the influence of alcohol (DUI). *State v. Haffey*, 2008 MT 433N, ¶ 2, 348 Mont. 371 (table); Mont. Sup. Ct., I.O.R. 3(d)(v) (providing that unpublished decisions "shall not be cited or relied upon as authority in any litigation in any court in Montana except . . . in a criminal action or proceeding involving the same defendant").

¶4 At trial, the State presented testimony that in the early morning hours of February 25, 2007, a small, red car deliberately struck a pedestrian, and then sped off. *Haffey*, ¶ 3. Minutes later police stopped the same small, red car a few blocks away. *Id.* at ¶ 4. Haffey was the driver. *Id.* His blood alcohol content was above the legal limit, and he was arrested. *Id.* While at the county jail, Haffey spoke with his father and admitted hitting a pedestrian with his car, but suggested that it was an accident. *Id.* at ¶ 6.

¶5 Haffey's defense theory was general denial. His principal arguments challenged the State of Montana's evidence and attempted to raise doubts about what happened. He denied being the driver of the car that hit the victim, and suggested repeatedly in his closing argument that he might have been the passenger. He also argued, in the

2

alternative, that if the jury determined that Haffey hit the victim with his car, that he did so negligently, rather than intentionally. (Haffey now maintains that someone else was driving, and that he concealed the true driver's identity because he did not want to "rat" on his friend and because he feared that doing so would endanger his family.)

¶6 In any event, the jury convicted Haffey, and the District Court sentenced him to fifty years in prison with twenty suspended. *Id.* at ¶¶ 6, 9. Haffey, now incarcerated and proceeding pro se, petitioned the District Court under § 46-21-110, MCA, for DNA testing of a blood-stained envelope found in front of the front passenger seat of the car. In his petition, Haffey contended that DNA testing would reveal the blood to be—not that of someone else—but his own. This, Haffey advanced, would prove that he was the passenger in the car at the time of the collision and that, therefore, someone else was driving.

¶7 The District Court denied Haffey's petition, reasoning that the petition failed to meet the requirements of § 46-21-110(1), MCA. The District Court ruled: "(1) Stephen Patrick Haffey's Petition for Post-Conviction Relief entitled 'Motion for DNA Testing Under Mont. Code Ann. § 46-21-110' is DENIED; and (2) This case is ORDERED DISMISSED."

¶8 Haffey appeals.

### STANDARD OF REVIEW

¶9 This is our seminal decision regarding postconviction DNA testing under § 46-21-110, MCA. At issue on appeal are the District Court's determinations under § 46-21-

3

110(5)(b), (c), (e), MCA, which involve, respectively, the chain of custody of the evidence to be tested, whether identity was or should have been an issue at trial, and whether the DNA testing would establish whether the petitioner was the perpetrator of the crime of which he was convicted. We conclude that these determinations are mixed questions of fact and law, subject to de novo review. *See United States v. Fasono*, 577 F.3d 572, 575 (5th Cir. 2009) (similar chain-of-custody and likelihood-of-innocence determinations under federal DNA testing statute, 18 U.S.C. § 3600(a)(4), (a)(8), subject to de novo review); *Illinois v. Urioste*, 736 N.E.2d 706, 710 (Ill. App. 2000) (question of whether identity was an issue under similar statute subject to de novo review); *see also United States v. Jordan*, 594 F.3d 1265, 1269-70 (10th Cir. 2010) (Lucero, J., concurring) (explaining propriety of de novo review); *but see e.g. Washington v. Riofta*, 209 P.3d 467, 473 (Wash. 2009) (applying abuse of discretion standard of review).

## DISCUSSION

¶10 *Whether the District Court erred in dismissing Haffey's petition for DNA testing.*

¶11 In response to the development of DNA testing to the point where it can confirm guilt or innocence in certain categories of cases, Montana, like forty-five other states and the Federal Government, has passed legislation allowing postconviction DNA testing. 2003 Mont. Laws 148-51; *D.A.'s Off. for the Third Jud. Dist. v. Osborne*, ___ U.S. ___, 129 S. Ct. 2308, 2316 (2009). Exoneration of the innocent is the principal purpose of allowing postconviction DNA testing. *E.g. Washington v. Riofta*, 209 P.3d 467, 472-73 (Wash. 2009); *Blake v. Maryland*, 909 A.2d 1020, 1023 (Md. 2006); *Kansas v. Denney*,

4

101 P.3d 1257, 1268 (Kan. 2004); *Knighten v. Florida*, 829 So. 2d 249, 252 (Fla. Dist. App. 2002).

¶12    Section 46-21-110, MCA, provides a procedure by which a person convicted of a felony may seek DNA testing to show innocence. To initiate the procedure, the person must file a verified petition that meets certain criteria. *Id.* at § 46-21-110(1). If the petition does not contain the required information, the district court must return the petition and advise the petitioner of the missing information. *Id.* at § 46-21-110(2). If the petition contains the required information, the district court must order the petition to be served on the attorney general, the county attorney of the county where the petitioner was convicted, and the body holding the evidence to be tested. *Id.* at § 46-21-110(3). The district court may then, in its discretion, hold a hearing on the petition. *Id.* at 46-21-110(4).

¶13    Section 46-21-110(5), MCA, presents the criteria for granting a petition for postconviction DNA testing:

> The court shall grant the petition if it determines that the petition is not made for the purpose of delay and that:
> (a)    the evidence to be tested:
> (i)    was secured in relation to the trial that resulted in the conviction;
> (ii)    is available; and
> (iii)    is in a condition that would permit the requested testing;
> (b)    the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, degraded, contaminated, altered, or replaced in any material aspect;
> (c)    the identity of the perpetrator of the felony was or should have been a significant issue in the case;

5

(d) the petitioner has made a prima facie showing that the evidence sought to be tested is material to the question of whether the petitioner was the perpetrator of the felony that resulted in the conviction;

(e) the requested testing results would establish, in light of all the evidence, whether the petitioner was the perpetrator of the felony that resulted in the conviction; and

(f) the evidence sought to be tested was not previously tested or was tested previously but another test would provide results that are reasonably more discriminating and probative on the question of whether the petitioner was the perpetrator of the felony that resulted in the conviction or would have a reasonable probability of contradicting the prior test results.

Here, the requirements of paragraphs (b), (c), and (e) are at issue.

¶14 The District Court, in denying Haffey's petition, first reasoned that Haffey had not shown that identity "was or should have been a significant issue in the case." Second, the District Court determined that Haffey had not adequately shown how—in light of all the evidence—the requested testing would establish whether he was innocent. Third, the District Court noted Haffey's concession that he could not meet the chain-of-custody requirement. We address these points in turn.

¶15 Paragraph (c) requires a district court to determine whether identity "was or should have been a significant issue in the case." *Id.* at § 46-21-110(5)(c). A petitioner may satisfy this requirement by showing that identity was a legitimate contested issue at trial. This is the case when a defendant denies having committed the acts alleged. *Missouri v. Ruff*, 256 S.W.3d 55, 57 (Mo. 2008); *Maine v. Donovan*, 853 A.2d 772, 776 (Me. 2004); *Anderson v. Delaware*, 831 A.2d 858, 865 (Del. 2003); *Illinois v. Urioste*, 763 N.E.2d 706, 713-14 (Ill. App. 2000). The statutory language further indicates that the identity requirement may be satisfied in cases where, as here, identity is not the only issue. *See*

6

§ 46-21-110(5)(c) ("[I]dentity . . . was or should have been *a* significant issue . . . ." (emphasis added)); *Urioste*, 763 N.E.2d at 713-14 (reasoning that identity remains at issue when a defendant denies committing the alleged act (*actus reus*) and also denies the charged state of mind (*mens rea*)). In contrast, identity is not an issue in cases where a defendant admits committing the act but relies an affirmative defense or a claim of insanity. *Urioste*, 763 N.E.2d at 714 ("Where a defendant contests guilt based upon self-defense, compulsion, entrapment, necessity, or a plea of insanity, identity ceases to be the issue."); *accord Ruff*, 256 S.W.3d at 57.

¶16 When Haffey went to trial, his principal argument was general denial. In his closing argument he denied striking the victim with his car, repeatedly suggesting that he was the passenger, not the driver. He also argued, in the alternative, that if the jury concluded that he struck the pedestrian with his car, then he did so negligently, not intentionally. The fact that Haffey raised an alternative argument challenging the *mens rea* of intentional conduct does not amount to an admission to having committed the crime and should not foreclose his access to DNA testing under § 46-21-110, MCA. We conclude that identity was a significant issue in this case.

¶17 Contrary to the reasoning of the District Court, it is irrelevant to the identity determination under paragraph (c) whether the eyewitnesses at the scene of the crime recalled seeing one or two occupants in the vehicle. The fallibility of eyewitness testimony is one reason that forty-six states and the Federal Government enacted statutes allowing postconviction DNA testing. *See* Brandon L. Garrett, *Claiming Innocence*, 92

7

Minn. L. Rev. 1629, 1635 (2008) (stating that postconviction DNA exonerations spurred states to pass statutes allowing postconviction DNA testing); *Bernal v. Colorado*, 44 P.3d 184, 190 (Colo. 2002) (citing studies showing that majority of postconviction exonerations result from erroneous eyewitness identifications). Further, the District Court's observation that the requested DNA testing would not produce evidence inconsistent with Haffey's guilt of the underlying offense, while correct, does not bear on the question of whether identity was a significant issue in the case. *See New Jersey v. Peterson*, 836 A.2d 821, 826 (N.J. Super. App. Div. 2003) ("[T]he strength of the evidence against a defendant is not a relevant factor in determining whether his identity as the perpetrator was a significant issue."). For these reasons, we conclude that the District Court erred in determining that identity was not a significant issue in the case.

¶18    On the other hand, the District Court correctly determined that Haffey's petition failed to meet the requirement of paragraph (e). Paragraph (e) requires a district court to determine that "the requested testing results would establish, in light of all the evidence, whether the petitioner was the perpetrator of the felony that resulted in the conviction." It is under this provision that a district court must weigh the exculpatory potential of DNA test results favorable to the petitioner against the prosecution's evidence presented at trial. This is a fact-specific inquiry that will lead to a spectrum of results in different cases. For example, where "the State presented a strong case, and a favorable DNA test would discredit only an ancillary fact, the testing should be refused." *Anderson*, 831 A.2d at 867 (construing similar requirement of Delaware postconviction DNA testing

8

statute). "At the opposite end of the spectrum, where the DNA test could exonerate the defendant, it does not matter how strong the other evidence might have been; [the statute] is satisfied." *Id.*

¶19 Haffey contends that DNA testing would reveal—not that the blood found on an envelope on the passenger side of the car belonged to a guilty third party—but rather that the blood belonged to Haffey, himself. Haffey contends that this will establish that he was the passenger in the car at the time of the collision.

¶20 Admittedly, DNA test results identifying the blood on the envelope found on the passenger side of the car to belong to Haffey could have some tendency to prove that Haffey was, in fact, sitting on the passenger side at the time of the collision and, therefore, not driving. This would likely satisfy the materiality requirement of paragraph (d). *See* § 46-21-110(5)(d) (requiring determination that "the petitioner has made a prima facie showing that the evidence sought to be tested is material to the question of whether the petitioner was the perpetrator of the felony that resulted in the conviction"). It does not, however, satisfy the requirement of paragraph (e).

¶21 The evidentiary value of the proposed test results would be minimal. This is because there are plausible, alternative explanations for why the bloody envelope was found on the passenger side. As the State suggests, if Haffey was the driver at the time of the collision, he might have moved his hand over the passenger side at some point before his arrest, splattering blood. Also, the envelope is a movable item, and it is possible that Haffey bled on it and then discarded it on the passenger side. (Moreover, blood was also

9

found on the car's steering wheel, which Haffey conspicuously does not assert belonged to the person he alleges was driving.) Thus, as the District Court explained, proof that Haffey bled on the envelope is not inconsistent with his guilt for the underlying offense. *See Riofta*, 209 P.3d at 473-74 (denying postconviction DNA testing where favorable test results "would not exclude [the petitioner] as the perpetrator" and where considerable evidence of guilt had been presented at trial).

¶22 The minimal evidentiary value that favorable DNA testing could produce contrasts with the weightiness of the evidence of Haffey's guilt presented at trial. Haffey was apprehended driving the car that had struck the victim just minutes earlier. Haffey's father testified that Haffey admitted hitting the victim with his car, but claimed it was an accident. No testimony was presented at trial that another person was driving, and no witness testified to seeing a passenger in the car at the time of the collision. Also, since Haffey specifically argued to the jury that the only blood inside the car was his, further proof that the blood was indeed his would simply be cumulative. In light of this evidence, we conclude that the requested DNA testing would not establish whether Haffey was the perpetrator of the crime. Because this determination is necessary for granting a petition for postconviction DNA testing, we need not go on to address the District Court's determination regarding the chain of custody under paragraph (b).

¶23 Haffey contends that the District Court, upon finding his petition deficient, should have returned it to him and advised him of the deficiencies, according to the procedure in § 46-21-110(2), MCA. This provision reads: "If the petition does not contain the

10

information required in subsection (1), the court shall return the petition to the petitioner and advise the petitioner that the matter cannot be considered without the missing information." *Id.* This provision, which reflects the remedial purpose of § 46-21-110, MCA, applies when a petition is "missing" information that is required by § 46-21-110(1), MCA. We do not interpret this provision to preclude a district court from denying a petition that is facially incapable of meeting the substantive requirements of § 46-21-110(5), MCA. To the contrary, dragging out a facially unmeritorious petition for postconviction DNA testing wastes the limited resources of the courts and all parties involved. Here, Haffey's petition might not have contained all the information required by § 46-21-110(1), MCA, but the information contained in the petition was sufficient to demonstrate that the petition was without merit. The District Court did not err in summarily dismissing Haffey's petition for postconviction DNA testing.

¶24 Haffey next contends that the District Court erroneously converted his petition for postconviction DNA testing under § 46-21-110, MCA, into a general petition for postconviction relief under §§ 46-21-101 to -104, MCA. The basis of this argument is the language used by the District Court to deny Haffey's petition. The District Court's order read: "(1) Stephen Patrick Haffey's Petition for Post-Conviction Relief entitled 'Motion for DNA Testing Under Mont. Code Ann. § 46-21-110' is DENIED; and (2) This case is ORDERED DISMISSED." Haffey was understandably confused by this language. His confusion should not, however, work to his disadvantage. As the State concedes, the analysis in the District Court's order only addressed Haffey's petition for

11

DNA testing. The District Court did not address Haffey's petition for postconviction relief under the provisions of §§ 46-21-101 to -104, MCA. Consequently, we affirm the District Court's dismissal of Haffey's petition for postconviction DNA testing, but remand the case for resolution of any remaining postconviction matters.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS