DAVIS, Judge.
Dwight Dubose appeals the summary denial of his motion for DNA testing filed *864 pursuant to Florida Rule of Criminal Procedure 8.853. We reverse the postconviction court’s denial and remand for further proceedings.
On August 16, 2001, a jury convicted Dubose of first-degree murder and attempted robbery. He was sentenced to life imprisonment on the murder charge and a consecutive five-year term on the attempted robbery charge. On April 19, 2011, Dubose filed the current motion for DNA testing. After finding the motion to be facially sufficient, the postconviction court ordered a response from the State. Following the response, the postconviction court denied Dubose’s motion as well as a subsequently filed motion for rehearing.
In order to raise a facially sufficient claim pursuant to rule 3.853(b), a motion must include the following:
(1) a statement of the facts relied upon in support of the motion, including a description of the physical evidence containing DNA to be tested and, if known, the present location or last known location of the evidence and how it originally was obtained;
(2) a statement that the evidence was not previously tested for DNA, or a statement that the results of previous DNA testing were inconclusive and that subsequent scientific developments in DNA testing techniques likely would produce a definitive result establishing that the movant is not the person who committed the crime;
(3) a statement that the movant is innocent and how the DNA testing requested by the motion will exonerate the mov-ant of the crime for which the movant was sentenced, or a statement how the DNA testing will mitigate the sentence received by the movant for that crime;
(4) a statement that identification of the movant is a genuinely disputed issue in the case and why it is an issue or an explanation of how the DNA evidence would either exonerate the defendant or mitigate the sentence that the movant received;
(5) a statement of any other facts relevant to the motion; and
(6) a certificate that a copy of the motion has been served on the prosecuting authority.
The language pertaining to how the DNA testing will exonerate the defendant contained in subsections (3) and (4) has been interpreted to mean that DNA testing procedures should be allowed if the results would create a “reasonable probability that the defendant would have been acquitted if the DNA evidence had been admitted at trial.” Knighten v. State, 829 So.2d 249, 252 (Fla. 2d DCA 2002).
Ultimately, the validity of Dubose’s claim depends upon his ability to meet the standard prescribed in the rule and to show that identity was a genuinely disputed issue at trial. In his rule 3.853 motion, Dubose addressed how each piece of evidence for which he requested testing would produce evidence of his innocence. These items included the victim’s gloves, clothing, and left-hand fingernail exemplars.[1] Dubose then recounted the facts of the crime, asserting that the assailant necessarily would have deposited his DNA on the victim’s hand, fingernails, gloves, and clothing. In support, Dubose noted that it was undisputed that for between as little as twenty seconds and as long as ten minutes, the assailant had the victim in a chokehold while the victim struggled to free himself. Dubose maintained that such a struggle would more likely than not have caused the assailant’s DNA to transfer to the victim’s clothing and would have involved the victim’s clawing at the assail *865 ant’s arms, thus transferring the assailant’s DNA to the victim’s fingernails.
In further support, Dubose noted that great weight is given to fingernail evidence and that Florida courts routinely have granted requests for DNA testing where there was even less concrete evidence of a struggle. See Schofield v. State, 861 So.2d 1244, 1245 (Fla. 2d DCA 2003) (concluding that in a case where the only evidence of physical contact was defensive stab wounds on the victim, DNA evidence revealing material from a third party “would create a reasonable probability that [the defendant] would [have been] acquitted”); Reddick v. State, 929 So.2d 34, 36 (Fla. 4th DCA 2006) (concluding that in a case where the victim was beaten and sexually assaulted, the presence of DNA from someone other than the defendant “would create a reasonable probability that [the defendant] would be acquitted of the charges”). Finally, Dubose alleged in his motion that while DNA found on the victim’s fingernails may be given greater weight, the same argument based on the nature of the struggle would support DNA testing of the victim’s clothing. Therefore, Dubose claimed that a foreign male DNA profile that excludes both himself and the victim would demonstrate that he could not have been the assailant.
With respect to the identification issue, Dubose was required to state and explain why “identification of the movant is a genuinely disputed issue in the case.” See Fla. R.Crim. P. 3.853(b)(4). Dubose conceded that four witnesses were introduced at trial, three of whom identified him as the assailant. However, Dubose claimed that he was arrested and convicted solely on the conflicting testimony of individuals who were convicted felons with additional felony charges pending at trial. Furthermore, Marcus Seymore, the first witness to come forward, was initially a suspect in the investigation. The two other witnesses who were able to later make an identification were acquaintances of Sey-more. Finally, the only witness not familiar with Seymore failed to identify Dubose either in a photopak or in court, claiming that it was too dark to make an identification despite the fact that he claimed to be only four feet away from the struggle. Taken as a whole, the four separate accounts of the crime were rife with inconsistencies regarding the details of the incident, the length of the struggle, and even the number of people involved.
In his motion, Dubose maintained that this court has stated that eyewitness identification of the defendant as the perpetrator does not remove any genuine dispute as to identity. See, e.g., Zollman v. State, 820 So.2d 1059, 1062 (Fla. 2d DCA 2002) (“[T]he fact that the victim identified Zollman as her assailant at trial does not mean that identity was not genuinely disputed at trial for purposes of postconviction DNA testing.”). In addition, Dubose maintained that this has been held to be the case even in situations where the defendant was identified by multiple eyewitnesses who also knew the defendant. See Ortiz v. State, 884 So.2d 70, 72 (Fla. 2d DCA 2004) (“Although Ortiz was apparently known to the victim, his identity as the perpetrator was at issue, and DNA testing would speak directly to this point....”); Knighten, 829 So.2d at 250 (holding that the trial court was incorrect in finding that identification was not at issue simply because both victims identified the movant as their attacker at trial). As such, Dubose claimed that in light of his continued assertions of innocence, identification was still a genuinely disputed issue.
Rule 3.853(c)(3) provides that upon review of the State’s response, the postcon-viction court must either enter an order on the merits or set a hearing. When the court does enter an order on the motion, it *866 must make the findings outlined in rule 3.858(c)(5):
(A) Whether it has been shown that physical evidence that may contain DNA still exists.
(B) Whether the results of DNA testing of that physical evidence likely would be admissible at trial and whether there exists reliable proof to establish that the evidence containing the tested DNA is authentic and would be admissible at a future hearing.
(C) Whether there is a reasonable probability that the movant would have been acquitted or would have received a lesser sentence if the DNA evidence had been admitted at trial.
In this case, the postconviction court focused primarily on the fact that Dubose was positively identified by three separate witnesses. While one witness was unable to identify Dubose, all of the witnesses agreed that there was only one assailant involved in the actual murder, and no evidence was introduced that this assailant was anyone other than Dubose. In addition, the postconviction court found that the lack of Dubose’s DNA on the evidence at issue — or the existence of a third party’s DNA — would not conclusively establish anything. Finally, the post-conviction court noted that despite the potentially questionable credibility of the witnesses and inconsistencies in their testimonies, each witness was subject to cross-examination and Dubose’s counsel emphasized the inconsistency and credibility concerns in closing arguments. Ultimately, the jury accepted the testimony as viable. Having examined the trial evidence, the postconviction court concluded that Dubose had not demonstrated that he would have been acquitted had this new DNA evidence been admitted at his trial.
However, despite the postconviction court’s findings, neither its order nor the attachments thereto conclusively refute Dubose’s claim that the items at issue would contain the DNA of the assailant or that this DNA would result in Dubose’s acquittal. The aforementioned decisions of this court establish that rule 3.853 is not to be construed in a manner that would bar testing based on the notion that it might substitute a postconviction court’s judgment for that of the jury. On the contrary, it offers a chance to ensure the validity of the jury’s verdict in certain unique situations. Dubose has shown that his is that type of situation; based on the nature of the crime, inconsistencies between testimony, and the questionable credibility of the witnesses, identification is indeed a genuinely disputed fact, and there is a reasonable probability that DNA evidence would have acquitted him.
Because Dubose has raised a facially sufficient claim for postconviction DNA testing under rule 3.853(b), we reverse the postconviction court’s denial and remand for an evidentiary hearing pursuant to rule 3.853(c).
Reversed and remanded.
VILLANTI and MORRIS, JJ., Concur.

. The victim’s left glove was found on the ground, leaving his left hand exposed.